# Richmond.

## Mutual Assurance Society v. Scottish Union & National Insurance Company.

### December 1st, 1887.

1. Insurance—*Cancellation—Notice*—Where provision in policy required notice of cancellation by company to be given to assured, notice of such cancellation given to broker who obtained the policy:

Held:

Insufficient to discharge liability of the insurer.

2. Idem.—Though the policy also contained a provision that the broker who obtained the policy should be considered the agent of the assured and not of the company, yet—

Held:

That the broker was agent of the assured only in procuring the policy and not to receive notice of cancellation.

3. Idem—*Contract—Custom.*—No custom as to giving notice of cancellation to the broker who obtained the policy, can avail to override an express stipulation in the policy that notice should be given to the assured.

4. Idem—*Construction of policies.*—See opinion of Lacy, J., and *M. A. Ass'n* v. *Newman, ante,* p. 52, and *Ins. Co.* v. *Cherry, ante,* p. 72.

Error to judgment of circuit court of city of Richmond, rendered December 24th, 1885, in an action of *assumpsit* on a policy of insurance, wherein the plaintiff in error, the Mutual Assurance Society of Virginia, was plaintiff, and the defendant in error, the Scottish Union and National Insurance Company, was defendant. Instructions were asked for by the defendant at the trial and given by the court, to which ruling the plaintiff excepted, and the verdict and judgment being for the defendant, the plaintiff obtained a writ of error. Opinion states the case.

*Kean & Guy* and *R. H. Steger*, for the plaintiff in error.

*Pegram & Stringfellow*, for the defendant in error.

In this case the contest is between two insurance companies, and not between an individual on one side and a corporation on the other; and the evidence of general usage admitted by the court below, and which proved decisive of the case, established the fact that at the time when the original and renewal contracts of insurance were made there was a well known recognized and established usage known and acted upon by insurance agents and companies in the city of Richmond, that wherever insurance is obtained, not directly from the company issuing the policy, but through a broker or insurance agent, to give notice in regard to renewal or cancellation of the policy to the broker obtaining the policy, and that the appellant had actual knowledge of this usage. See evidence of Frank Steger, P. Gibson, and E. B. Meade, contained in record.

As to the admissibility of such evidence to measure and define the extent of the agent's authority, and to annex incidents to contracts respecting matters with regard to which the contract is silent, see 1st Parsons on Contracts, pp. 39, 40; Notes to *Wigglesworth* v. *Dallison*, Smith's Leading Cases, Vol. I, part 2, pp. 825, 827, 836; *Fisher* v. *Sargent*, 10th Cush., 250; 1st Wait's Actions and Defenses, pp. 128, 228, 229.

The stipulation in the policy in this case, with regard to the agency of the broker or other person obtaining the insurance, in terms applies to the renewal as well as to the original insurance, and yet in the face of its plain terms the appellant has the boldness to insist that the agency of Claiborne & Son was limited to the procurement of the original insurance.

In one aspect of the case the appellant insists upon a rigid adherence to the terms of the policy, and in another it does not hesitate to ignore and disregard the terms of that instrument.

The stipulation in question was a provision inserted by the appellee in its policy for its own protection. It obliged the appellant to recognize as its agent the person procuring the insurance, but it could not and was not intended to restrict its power to extend the authority of its agent so as to embrace transactions subsequent to the inception of the policy or the renewal thereof.

Whether the power of the agent in this case has been so extended as to embrace subsequent transactions, depends upon the actual or apparent authority conferred upon such agent by the appellant, and not upon the terms of the policy, which do not purport to provide for such a contingency.

In *Hermann* v. *Niagara Ins. Co.*, 100 N. Y., p. 411, it appears that the plaintiff resided in New York, and his agents and the agents of the insurers resided in the city of Troy, and that the local custom in Troy was unknown to the plaintiff. The plaintiff not being a resident of the place where the local custom prevailed, and being in fact ignorant of it, he of course could not be affected by proof of such local usage.

In the opinion of the court the following passage occurs: " The agent procuring the insurance may in a given case be the agent of the insured in transactions subsequent to the inception of the policy, but this would depend upon his actual authority."

In the case of the *Indiana Insurance Co.* v. *Hartwell*, 100 Ind. R. 566, the court in its opinion says: " The averments in the answer we are considering show nothing more than that the brokers were employed or solicited to procure a line of insurance for the appellee. Whether or not in doing that they were the agents of the insured or the insurer must depend upon the actual relations which existed between the parties at the time, and not solely upon the stipulations in the policy. It is not believed that the insurance company, by a stipulation in its policy, could appoint agents for the insured if the facts showed that they were really its agents."

These two cases, it is submitted, fully sustain our position,

and in both the case of *Grace* v. *American Central Ins. Co.*, 109 U. S. Rep. 278, is cited and approved.

In this last-mentioned case the court decided—first, that the special clause in the policy in that case did not purport to constitute the person procuring the insurance a continuing agent; and, secondly, that evidence of a usage or custom among insurance men, with which it did not appear that the plaintiffs, who were not insurance men, were acquainted, was inadmissible to vary the terms of the contract. The contract, and the fact of its procurement by the broker, seem to have comprised the entire legal testimony before the court. Whether the authority to accept notice of cancellation, either actual or apparent, was superadded to the mere power to procure the insurance depended alone upon the construction of the terms of the policy. Nothing else appearing except what appeared upon the face of the policy, it was properly held that by its terms the agency of the broker extended merely to the procurement of the contract.

Judge Harlan, delivering the opinion of the court, says: "As the uncontradicted evidence was that Anthony's agency or employment extended only to the procurement of the insurance, the jury should have been instructed that his agency ceased when the policy was executed, and that notice to him subsequently of its termination was ineffectual to work a rescision of the contract. * * * The contract, as we have seen, did not authorize the company to cancel it upon notice merely to the party procuring the insurance—his agency, according to the evidence, not extending beyond the consummation of the contract."

The court below had held that by the terms of the special clause in the policy Anthony's agency was extended to transactions subsequent to the consummation of the contract.

We are not contending that by the terms of the policy the agency of Claiborne & Son was extended to embrace matters occurring subsequent to the procurement of the policy, but we

have shown by proof of a general usage or custom known to the appellant, and with reference to which it must be presumed to have acted, that the employment by it of Claiborne & Son, by necessary implication, conferred upon them authority to receive notice of cancellation.

. In *Whited* v. *Germania Fire Ins. Co.*, 76 N. Y., 419, the court , construed the special clause in the policy as extending the agent's authority to subsequent transactions, and yet as the facts proved that he acted as agent of the insurance company, inasmuch as he had as its agent countersigned the policy and the two renewal receipts, the court held, notwithstanding the terms of the policy, that he was the agent of the insurer, and that the company was bound by his action.

In *Kehler* v. *New Orleans Ins. Co.*, 23 Fed. Rep., 709, the court construes the special clause in the policy in accordance with the decision in *Grace* v. *American Central Ins. Co.*, and merely ·decides the general proposition like the Indiana case, that an agent with authority to obtain insurance is not necessarily an agent of the insured to receive notice of cancellation. There was no evidence of usage or parol testimony of any kind in this case to show the extent of the agent's authority.

As we are not contending that usage can be resorted to to contravene the express stipulations of parties to a contract, or to control the rules of law with reference to a, particular trade, it is unnecessary for us to notice the decisions cited in appellant's petition from 34th and 44th N. Y. Reports.

It is admitted by the counsel for the appellant that "if usage and customs are to control, the case is ended." We fully agree with them, and have therefore limited this discussion to the single point of the admissibility of the evidence of usage, which was admitted by the court below. If this evidence was admissible, then the instructions given by the circuit court cover the whole law of the case, and no error has been committed of which the appellant has a right to complain.

. As the record shows, the claim of the appellant, if it had

any, was against the Niagara Insurance Company, who reinsured the risk after the policy of the appellee had been cancelled, and whose reinsurance, according to the testimony of Major Claiborne was never cancelled.

It is confidently submitted that the judgment of the circuit court complained of is correct, and should be affirmed.

LACY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of the city of Richmond, rendered on the twenty-fourth of December, 1885.   The facts material to be stated are briefly as follows: The plaintiff in error having a risk of $3,500 on the property of James T. Gray, procured, through Claiborne & Son, insurance brokers in Richmond, Virginia, a re-insurance in the defendant in error's company as to $2,000 thereof, on December 11, 1883.   The said Claiborne & Son, brokers, having procured this insurance, delivered the policy to the plaintiff in error, and received the premium from them, the said plaintiff in error, and on the eleventh of December, 1884, the said Claiborne & Son, at the instance of the defendant in error, procured a renewal of the said policy, and received the premium for the same from the plaintiff in error, and delivered to the said plaintiff in error the renewal certificate.

On the seventeenth of December, 1884, the defendant in error procured a re-insurance of their $2,000 risk above-mentioned in the Niagara Insurance company, and carried this policy to the said brokers, Claiborne & Son, to be substituted for their policy of like amount, but did not get their policy from the said brokers, because they did not have it.   On the nineteenth of December following, the Niagara Insurance company cancelled their policy; and notice of this was given by the defendant in error to the said brokers, Claiborne & Son, and later in the day, on the said nineteenth of December, the fire and loss occurred.

The plaintiff in error had no notice of any of these transactions subsequent to the delivery of the renewal receipt on the eleventh day of December, 1884, and the payment by them of the premium thereon, except such constructive notice as is claimed to have been given to them through the brokers who procured the policy for them on the eleventh of December, 1883. The plaintiff in error denied that the said brokers represented them any otherwise than to `procure the said policy, and, denying any notice of cancellation to them before the loss, brought suit upon the policy against the defendant in error. The whole dispute in the case turned upon the question of notice of cancellation by the defendant in error; that is, whether notice of cancellation to the broker who procured the policy is notice to the insured, in a case where the broker was not the general agent of the insured, nor otherwise his agent than in such agency as arises by reason of the broker having procured the policy; it being in this case conceded that Claiborne & Son were not the general agents, nor otherwise the agents of the plaintiff in error than such as arose through their employment as brokers, to procure the policy in question.

The policy contained the following provisions: " This policy may be cancelled at any time at the request of assured, the company retaining customary monthly short rates, for the time the policy has been in force. It may also be cancelled at any time by the company, on giving written or verbal *notice to that effect, and refunding, or tendering to the assured,* or if the policy be not held by him, to the legal holder thereof, a ratable proportion of the premium for the unexpired term of the policy." And also the following provision: "If any broker, or other person than the assured, or the duly authorized agent of this company has procured this insurance, or any renewal thereof, he shall be deemed to be the *agent of the assured,* and not of this company, in any transaction relating to the insurance." .

The defendant in error did not claim that the brokers in

question were the agents of the plaintiffs, otherwise than as has been stated; but they proved that there was a well established custom or usage in the city of Richmond, among insurance companies, brokers, and agents doing business in the said city that whenever insurance policies were obtained through insurance brokers, all notices as to the renewal and cancellation of the same were required to be given, *not to the assured,* but °to the broker through whom the assurance was effected. The controversy turning upon this question, both sides moved for instructions, and the court gave an instruction, instructing the jury that if they believed there was such a custom, and that notice of cancellation was given to the broker who effected the insurance in this case, they must find for the defendant, and there was verdict and judgment for the defendant; whereupon the plaintiff excepted, and brought the case here by writ of error.

The construction of insurance policies often arises in this court, and has frequently and recently been the subject of consideration and judicial decision here, as well as in other appellate courts. It is well settled, as we have often said, that "the policy must be construed according to its terms; and the evident intent of the parties is to be gathered from the language used; and the court cannot extend the risk beyond what is fairly within the terms of the policy. New conditions cannot be added by the court; but the rights of the parties must stand upon the contract as made." Wood on Ins., § 67, p. 177. A policy is to be construed as a whole; not literally nor severely, as to either side, but accurately, so as to carry into effect the real purpose and understanding of the parties. But all conditions involving forfeitures, as well as all exemptions, will be construed strictly, and most favorably to the assured; that is, most strongly against the party for whose benefit they are inserted. *Id., Insurance Co.* v. *Gwathmey,* 82 Va., 923; *Mutual Accident Ass'n* v. *Newman, ante,* p. 52; and *Watertown Fire Insurance Co.* v. *Cherry, ante,* p. 72; and the cases cited.

The only real controversy in this case, as has been set forth, is as to the question of notice of cancellation. The policy provides for notice to the *assured*. *The notice was to the broker who procured the policy*, the policy providing that, "if any broker has procured this insurance, he shall be deemed to be the agent of the assured, and not of this company, in any transaction relating to the insurance." The broker was claimed on the trial of the case to be the agent of the insured. But this provision having been often the subject of judicial construction in the highest courts of this country, it having been held that "a right reserved in a policy of insurance to terminate the insurance on giving notice to that effect, and refunding a ratable proportion of the premium to the assured for the unexpired term," "is not effectively exercised by the company's giving mere notice to the broker or agent of the insured through whom he procured the policy, that he desires to cancel the same." That construction of that provision was not contended for here by the learned counsel for the defendant in error.

In *Hermann* v. *Insurance Co.*, reported in 1 Central Reporter, 707, decided in the court of appeals of New York, November, 1885, Judge Andrews said: "The defendant reserved the right to cancel the policy on notice to the assured. This condition would be satisfied by personal notice to the plaintiff, or to an agent authorized to receive it. But the authority of a broker employed to procure insurance for his principal, such broker not being a general agent to place and manage insurance on his principal's property, terminates with the procurement of the policy. It cannot in reason be held to continue after the insurance has been procured and the policy delivered to the principal. An agent to procure a contract has no power to discharge it, implied from the original authority merely. If he possesses that power, it arises from some actual or apparent authority, superadded to the mere power to enter into the contract. The defendant relies upon a special clause in the policy, which declares that the person who procures the policy shall

be deemed the agent of the insured, and not of the company, [as has been set forth above.] The obvious meaning of the clause is that the person procuring the insurance shall, *in respect to that matter*, be deemed the agent of the insured;" citing *Grace* v. *Central Insurance Co.*, decided in the supreme court of the United States, November 19, 1883, reported in 109 U. S., 278. See the opinion of Justice Harlan in that case, and cases cited. *White* v. *Insurance Co.*, 120 Mass., 330, and *Adams* v. *Insurance Co.*, 12 Ins. Law J., 787. This, then, being the well-settled and conceded law on this subject, it was sought to sustain the notice in this case upon the ground that the local custom in Richmond was to notify the broker, etc., and the circuit court so instructed the jury. But this instruction violates the plainest principles of construction as set forth above. The policy required notice to be given of the desire to cancel *to the assured;* and the question, therefore, is whether the broker was the agent of the assured for this purpose. The question is not what the local custom of Richmond is as to this notice, but what is the contract on the subject between the parties. The evidence is clear, and it is admitted that these brokers were not otherwise the agents of the insured in this case, except to procure the insurance. If, therefore, the insurers did not give notice as required by the contract, it is immaterial whether they gave notice according to the custom or not. This question is, perhaps, as well settled upon authority as the other.

In the case of *Hermann* v. *Niagara Fire Insurance Co.*, *supra*, it is said, after saying it was the local custom of Troy to give this notice to the broker, "and, in so far as it assumes to make the broker an agent of the insured to receive notice of the cancellation, although he had no such authority in fact, it is an attempt to override the legal construction of the contract, and was inadmissible to control it."

It was said by Wright, J., in the court of appeals of New York, (*Higgins* v. *Moore*, 34 N. Y., 425): "It is obvious that

the rights of the plaintiff cannot be controlled or affected by a local usage in a particular trade. The usage is invalid, and has no binding force upon the plaintiffs. Such a usage, if sanctioned, would be to overthrow the law in the city of New York. If it prevails there, it cannot be allowed to control the settled and acknowledged law of the State. Again, the pretended usage is void, as not general, being confined to certain persons in New York, unreasonable, and against public policy. The proposition that persons engaged in a particular trade at a particular place can, by the custom or usage adopted and regulated by themselves, create a power beyond what is actually conferred or necessarily implied, depriving an owner of his property, the possession of which he had not parted with, seems to me so fraught with mischief, as well as unsoundness, as to require only its announcement to meet with repudiation."

No usage is admissible to control the rules of law. *Wheeler* v. *Newbould,* 16 N. Y., 392; Judge Brown saying in that case: "The usage to which it refers is in contradiction to the fair and legal import of the contract"—citing *Furniss* v. *Honé,* 8 Wend., 247; *Dykers* v. *Allen,* 7 Hill, 497; *Merchants Bank* v. *Woodruff,* 6 Hill, 174.

Justice Story said in *Donnell* v. *Columbian Insurance Co.,* 2 Sum., 377: "I am among those judges who think usages among merchants should be very sparingly adopted as rules of law by courts of justice, as they are often founded in mere mistake, and still more often in the want of enlarged and comprehensive views of the full bearing of principles."

Judge Dewey said, in *Clark* v. *Baker,* 11 Metc., 189: "Usages of this character [local usages of trade] are only admissible upon the hypothesis that the parties have contracted with reference to them. If the parties make express stipulations as to the terms of a sale, or the manner of the performance of a contract, or state the conditions upon which it may be rescinded, such express stipulations must be taken as the *terms of the contract,* and they are not to be affected by any usage contrary to them."

Lord Lyndhurst, C. B., said, in the case of *Blackett* v. *Royal Exchange Assurance Co.*, 2 Tyrw., 273: "The objection to the parol evidence is that it was not to explain any ambiguous words in the policy, or any words which might admit of doubt, or to introduce matter upon which the policy was silent; but that it was at direct variance with the words of the policy, and in plain opposition to the language it used. We are therefore of opinion that the evidence of usage was properly rejected."

In *Bradley* v. *Wheeler*, 44 N. Y., 503, it was said: "As to the admissibility of usages in general, the later cases show that the dislike to them which seems always to have characterized the ablest judges in this country, and particularly in this State, is now becoming general, and it is now quite well settled that usage or custom cannot be proved to contravene a rule of law or to contradict the express or implied terms of a contract or to make the legal rights or liabilities of the parties to a contract other than they are by the common law. Here there was no uncertainty as to the terms of the contract. Hence the custom offered to be proved would have contradicted or varied the terms of the contract, and was therefore inadmissible."

In *Hinton* v. *Locke*, 5 Hill, 437, Bronson, J., said: "Usage can never be set up in contravention of the contract. When the agreement contains any express terms on the subject, evidence of the custom shall be excluded." *Expressum facit cessare tacitum.* *Clarke* v. *Roystone*, 13 Mees. & W., 752; *Roberts* v. *Baker*, 1 Cromp. & M., 808. Promises *in law* exist only in the absence of express promises. A party, therefore, cannot be bound by an *implied* contract, when he has made an *express* contract as to the same subject-matter. Chit. on Cont., 85; *Selway* v. *Fogg*, 5 Mees. & W., 83; *Ferguson* v. *Carrington*, 9 Barn. & C., 59.

Lastly, it must be remembered that no custom, however universal or old or known, unless it has actually passed into law, has any force over parties against their will. Hence, in the interpretation of contracts, it is an established rule that no

custom can be admitted which the parties have seen fit expressly to exclude. And not only is a custom inadmissible which the parties have expressly excluded, but it is equally so if the parties have excluded it by necessary implication, as by providing that the thing which the custom affects shall be done in a different way; for a custom can no more be set up against the clear intention of the parties than against their express agreement, and no usage can be incorporated into a contract, which is inconsistent with the terms of the contract. 2 Pars. on Cont., 546. We have said that this question is, perhaps, as well settled, upon authority as any question arising in this case, and considered above, and our investigations lead us to the conclusion that citations might be indefinitely extended.

But we will conclude the discussion of this question by citing the clear and satisfactory conclusions of Mr. Justice Story, in the case of *The Schooner Ruside,* 2 Sum., 569, in which, in speaking of what he terms the almost indiscriminate habit of late years of setting up particular usages or customs in almost all kinds of business and trade to control, vary, or annul the general liabilities of parties under the common law, as well as under the commercial law, he said: "But I apprehend that it can never be proper to resort to any usage or custom to *control* or *vary* the positive stipulations in a written contract, and *a fortiori* not to contradict them. An express contract of the parties is always admissible to supersede or vary or control a usage or custom, for the latter may always be waived at the will of the parties. But a written or express contract cannot be *controlled* or *varied* or *contradicted* by a usage or custom."

Upon reason, as well as upon authority, it is clear that under the contract in this case the notice of a desire to cancel the same was to be given to the assured. This is the express stipulation in the policy itself "*to the assured.*" The notice was not given to the assured, nor to a person authorized to receive notice for the company. Notice was neither given to the assured nor to any agent of the assured, and it follows that

there was no notice of a desire for cancellation before the loss occurred. The assured in this case was another insurance company; but the principle is the same as when an individual is the assured. We think the circuit court of Richmond erred in instructing the jury as we have seen on the question of notice of cancellation; that it should have instructed the jury in this case that no notice of cancellation was given to the company by giving such notice to a broker, not authorized to receive it; and the judgment appealed from will be reversed and annulled.

JUDGMENT REVERSED.