(13 App. Div. 519.)

PARTRIDGE v. MILWAUKEE MECHANICS' INS. CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. INSURANCE—CANCELLATION OF POLICY—NOTICE.
The defendant company issued a fire insurance policy to plaintiff. It provided that it could be canceled by the company at any time on giving five days' notice. There was a further provision that only the pro rata premium should be retained by the company on its cancellation of the policy. The special agent and adjuster of the company wrote the local agent to cancel the policy. The local agent wrote the insured, inclosing two policies in other companies in lieu of the one issued by defendant, and requested its return. The letter was received by the insured Saturday afternoon. That night fire destroyed the insured property. The letter was opened Monday morning. *Held*, that the letters and acts did not operate as a cancellation of defendant's policy.

2. SAME—"OTHER INSURANCE" CONDITIONS—WHAT IS NOT A BREACH.
The failure to set forth, in proofs of loss, two policies which had been offered the insured in lieu of the one covering the property destroyed, but not accepted by her, is not a violation of a provision in the operative policy that such proof shall contain a statement "of all other insurance, whether valid or not, covering any of said property."

3. SAME—PROOFS OF LOSS—"IMMEDIATE" NOTICE.
An insurance company received timely notice of a loss under its policy, requiring "immediate" written notice, where its local agent was cognizant of the fire and loss, and had several conversations with the insured, who made

a verbal claim of loss, and the agent wrote the company, which sent out an adjuster 10 days after the fire, and finally proofs of loss were sent to defendant, who retained them without comment.

Appeal from judgment on report of referee.

Action by Ellen B. Partridge against the Milwaukee Mechanics' Insurance Company. There was a judgment for plaintiff, and defendant appeals. Affirmed.

Action upon a standard policy of fire insurance issued by the defendant to the plaintiff for $2,000, covering personal property owned by her in the village of Seneca Falls, in the third story of the Partridge Block, in rooms occupied by the plaintiff for living rooms, in which she had furniture, personal effects, and chattels of which she was the owner. S. L. Jacoby was the authorized agent of the defendant to issue and countersign its policies of insurance, and he had associated with him his son, Maynard Jacoby, and they, in the firm name of Jacoby & Son, were transacting the business of insurance agents for and in behalf of the defendant, apparently with the knowledge and approval of the defendant, under the authority that had theretofore been given to S. L. Jacoby. On the 17th of November, 1893, they issued a policy of insurance to the plaintiff for $2,000 for the term of one year from November 18, 1893. On that day the plaintiff was visiting in the city of Rochester, and one of the firm presented the policy to her, and received her check of $40 in payment of the premium, and she received and continued to hold the policy down to and after the fire occurred, never having actually delivered it up or surrendered it, or authorized any one to deliver it up or surrender it; nor did she ever receive a return of the premium which she thus paid. By the terms of the policy concurrent insurance was permitted. The referee finds: "That on the 3d day of December, 1893, at about 12:15 to 12:45 a. m., the premises containing said property was destroyed by fire, and the property insured in said policy was wholly lost and destroyed by said fire." He also finds, viz.: "That immediately—that is to say, within a reasonable time—after said fire, written notice thereof and of loss under the policy in suit was given to the defendant, after request of the plaintiff, by Maynard Jacoby. That on December 9, 1893, written notice of said fire and of loss under the policy in suit was given in writing to the defendant by Maynard Jacoby, under the name of S. L. Jacoby, after request of the plaintiff. That immediately after the defendant received such notice, George B. Walton, the special agent and adjuster of the defendant, came to Seneca Falls, arriving there on December 12, 1893. That the said Walton then and there received from Maynard Jacoby verbal notice of said fire and loss under the policy in suit. That the said Walton learned the facts of the case, and, electing to consider the policy in suit as a canceled policy, departed without seeing the plaintiff. That the defendant company, thereupon considering said policy as a canceled one, has ever since so treated the same; and that it has waived any, or other, or further notice of said fire on behalf of the plaintiff. That within sixty days after said fire and loss, proofs of loss, as required by said policy, were duly served on the defendant company, and by it received, and retained without objection; * * * and that defendant waived any other or further proofs. That the defendant, until after the commencement of this action, never advised the plaintiff of any ground of resistance to pay except that the policy in suit had been canceled; and before this action was commenced it waived any other or further notice of fire or of loss or of proofs of loss than as above stated." The referee found as conclusions of law: "That the said policy was a valid and subsisting contract of insurance at the time of said fire between the plaintiff and defendant."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Adelbert Moot, for appellant.
MacDonald Brothers, for respondent.

HARDIN, P. J. Appellant contends that Jacoby was plaintiff's agent in the matter of placing insurance, and that, when notice was

given to him to cancel the policy in suit, the same ceased to be a binding contract upon the defendant.    One T. Y. Brown is general agent of the defendant, having his place of business in the city of New York, at 61 William street, and associated with him is Mr. George B. Walton, who has, for 10 years, been acting as special agent for the defendant.    After Jacoby had made a daily report of the policy in question, it seems Walton made some inquiry of the agent about the. risk, and the report thereon was amended by Jacoby, and returned to the New York office about the 24th of November. Thereupon Walton wrote to Jacoby a letter, which bore date November 24, 1893, and was mailed on that day to Jacoby.    It was in the following words:

"Ellen B. Partridge, No. 145,617.
                    "Seneca Falls, N. Y.                    November 24, 3.
"We kindly request the prompt cancellation of policy No. 145,617, as we already have all we want in this immediate location.    Please return policy No. 145,617 to us by early mail.
            "Yours, truly,                    George B. Walton, S. A."

It appears by the evidence that Jacoby undertook to comply with the request contained in the letter.    At that time he had received the premium for the risk, and the policy had been delivered to, and was in the possession of, the plaintiff; and, in order to obtain a cancellation of it, it was incumbent upon the company to tender back the premium received, and to request a surrender or cancellation of the policy.    Instead of pursuing that course, Jacoby volunteered to issue two other policies for $1,000 each, one in the Williamsburg City and one in the Lancashire Company, and placed them in the mail, addressed to the plaintiff, and did request her to accept the same in lieu of the one held in the defendant company; and accompanying the proposed substituted policies was a letter in the following language:

                    "Seneca Falls, N. Y., Nov. 29, '93.
"Mrs. E. B. Partridge—Dear Madam:  I inclose you herewith two policies of $1,000 each on your furniture in block here, to take the place of 145,617, Milwaukee Mechanics', for $2,000, which please return.
            "Very truly,                    S. L. Jacoby & Son."

. According to the envelope which covered the letter and the two policies, it was placed in the post office at Seneca Falls November 29th, at 5:30 p. m.    She being absent in the city of Rochester, it was forwarded through the mail to her, and reached Rochester November 30th, at 6 a. m.    From Rochester it was remailed December 1st, at 9:30 a. m., and reached Seneca Falls December 1st, at 6 p. m.
The plaintiff testified, viz.:

"The letter from Mr. Jacoby containing these policies came in Saturday afternoon.  My janitor went for the mail, and I was ill.  I had a certain place on the table where he left my mail, and as I passed out with the officer I reached over and got this mail, and laid it in the tray that he had during the fire.  The fire was on Saturday night or Sunday morning."

It seems she was carried out of the fire by an officer, and the incident that she refers to of reaching for the mail occurred during the fire.    She further testified (folio 220):

"This envelope, Exhibit 3, that contained the policies, was opened by me at Mr. Baird's house on Monday morning after the fire. Prior to that day, I had not known anything about these policies in the Lancashire or Williamsburg City. I had never ordered them from Mr. Jacoby. I had never said anything to Mr. Jacoby about such policies at all."

She further testified:

"No notice was ever given to me by anybody of the cancellation or intention to cancel this Milwaukee policy in suit. No portion of the premium paid by me was ever repaid, or offered to be repaid, by anybody. I never authorized or directed Mr. Jacoby to get the Williamsburg City or Lancashire policies, or any others, in place of the Milwaukee Mechanics' policy. I did not pay, or offer to pay, to him, or anybody else, any premiums on either of these policies. I knew nothing about the issuing or pretended issuing of either of these last two policies until that morning, when I took them out of the envelope. I knew nothing about it. As to how I came to hold these two policies so long after the fire, I asked Mr. Gay what I should do. I didn't know what to do. He told me to hold them until I gave them to him."

It is quite apparent from her testimony that she had no knowledge of any desire or intention on the part of the defendant or its agent to cancel the policy in suit until after the fire transpired.

It is provided in the policy as follows: "This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation." And it is further provided in the policy "that when this policy is canceled by this company by giving notice, it shall retain only the pro rata premium."

We think the notice sent by the agent from New York to Jacoby, requesting the cancellation, falls far short of a compliance with the provisions of the policy, and that the notice to Jacoby was not a notice to the plaintiff, and that until she became aware of the desire of the company she was not called upon to elect whether she would surrender the policy in the defendant's company, and take the pro rata of the return premium, or whether she would elect to take a policy in other companies.

In Van Valkenburgh v. Insurance Co., 51 N. Y. 465, it was held that:

"To cancel a contract it is requisite: (1) That notice should be given to the assured that the insurance is terminated, not that it will be at a future day. (2) That the amount to be returned should be paid or tendered to the assured. He must be sought out, and tender made. Holding it subject to his call is insufficient. The underwriter must be certain also that the whole 'ratable proportion' is refunded. This is a condition precedent, and payment of a less sum does not terminate the insurance."

In Marshall v. Insurance Co., 78 Hun, 83, 29 N. Y. Supp. 334, affirmed 44 N. E. 1125, it was held that a provision in a policy reserving the right to cancel it, in order to "be valid, must be upon the condition of a restoration of the unearned premium upon the same, where the assured has practiced no fraud in obtaining the policy."

In Walthear v. Insurance Co., 2 App. Div. 328, 37 N. Y. Supp. 857, accompanying the notice of cancellation, under the power reserved in the policy, was an offer to return the unearned premium upon a return of the policy, and under the circumstances of that

case it was held that the offer, coupled with the notice, worked a cancellation. The case differs very essentially from the one in hand.

In Griffey v. Insurance Co., 100 N. Y. 417, 3 N. E. 309, it appeared that there was a clause authorizing the company to terminate the policy at its option on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term. The company notified the insured, before a loss, of its desire to cancel the policy, and asked to have the policy returned, promising when this was done to remit to them the return premium; and it was held "that this was not sufficient to cancel the policy; that the company had no right to require a return of the policy, or to require the insured to take any step in the matter; that notice of cancellation and actual payment or tender of the sum to be returned would alone suffice." In the course of the opinion delivered in that case by Danforth, J., he said: "Notice of cancellation and actual payment or tender of the sum due could alone suffice." The request given to Jacoby by the defendant's agent was not a notice to the plaintiff, and the proposition on the part of Jacoby to issue other policies, and tender them, through the mail, to the plaintiff, under the circumstances disclosed by the evidence, "did not operate as a cancellation of defendant's policy." Hermann v. Insurance Co., 100 N. Y. 411, 3 N. E. 341. Plaintiff had given Jacoby no authority to accept, in lieu of the defendant's policy, one issued by the Lancashire Company and another issued by the Williamsburg City Company; and, in order to have such policies received by the plaintiff as substitution for the one issued by the defendant, it was essential that the consent and approval of the plaintiff should be obtained. The evidence warranted the finding of the referee that she never assented, and therefore his conclusion that there was not a cancellation of the policy is correct.

Appellant calls our attention to Stone v. Insurance Co., 105 N. Y. 543, 12 N. E. 45, which differs very essentially from the case in hand. In that case the policy was procured through an insurance broker, who did not pay the premium, but, in accordance with the course of business between him and the defendant, it was charged to him, he being allowed to pay when it suited his convenience. Subsequently the defendant served upon the broker a notice to the effect that it desired to cancel the policy, and that the same would not be held by it binding after noon of a day specified. After that hour of the day a fire occurred, and in an action upon the policy it was held:

"That the notice was effectual to cancel the policy; that it was not necessary, for that purpose, to return a pro rata share of the premium, as defendant, having received nothing, had nothing to return, and the notice canceled so much of the charge against F. as represented the unearned premium."

We think the case does not support the contention of the appellant. Nor do we think the new insurances were binding upon the companies issuing them, as they never were received and accepted by the plaintiff before the fire occurred. Nor do we think it was error to omit in the proofs of loss to mention the policies in the

Lancashire and Williamsburg City Companies, as they had not been received or accepted by the plaintiff before the fire transpired. The language of the policy, providing that the proofs of loss shall contain a statement "of all other insurance, whether valid or not, covering any of the said property," ought not to be construed so as to cover mere propositions for insurance which have not resulted in an actual policy, or propositions made by an agent to a party which have not been accepted, for other insurance covering any of the property mentioned in an actually existing policy."

It is contended in behalf of the appellant that immediate written notice of the loss was not given to the company. In Lowry v. Insurance Co., 32 Hun, 329, affirmed 105 N. Y. 646, it was held that, notwithstanding the restrictive clause requiring proofs of loss, "the service of proofs of loss might be waived by parol"; and under the circumstances of that case the question of waiver should have been left to the jury. In the course of the opinion it was held:

"That, after loss has happened, conditions in the policy with respect to preliminary proofs may be waived by parol, though the policy contain a stipulation that no waiver shall take place except in writing, signed by the president or secretary of the company."

That doctrine has been sanctioned and repeated several times by the court of appeals.

In Weed v. Insurance Co., 133 N. Y. 394, 31 N. E. 231, the policy contained a provision requiring notice of loss to be given forthwith. No notice was given, but proofs of loss were served 19 days after the fire, which were received by the defendant and retained, and it was held that a finding was justified that the defendant had waived the preliminary notice.

In Paltrovitch v. Insurance Co., 143 N. Y. 73, 37 N. E. 639, it was held, viz.:

"The stipulations of a fire insurance policy which relate to the procedure merely in case of loss are to be reasonably, not rigidly, construed."

In that case, in speaking of the terms of a contract of insurance, Finch, J., said:

"Where those terms respect the modes of proof and procedure after the loss, we shall give them always a reasonable and liberal construction, and not a severe and technical one."

Shortly after the fire, the Jacobys had interviews with the plaintiff, and became entirely conversant with all the facts and circumstances relating to the same; and S. L. Jacoby, in one of the interviews held with the plaintiff, sought to have her give up the policy of the defendant and retain the others, and she promptly and resolutely declined to do so. Notice was sent to several agents of the other companies that had policies upon the property destroyed, and there is some evidence that a notice was sent to the defendant, it having another policy on the building, and through that means obtained early knowledge of the fact that a fire had taken place. There is some evidence that Jacoby promised to notify the defendant immediately of the occurrence of the fire; and on the 9th of December S. L. Jacoby addressed a letter to Brown, the general

agent in New York City, reciting the circumstances of the efforts made by him to cancel the defendant's policy, and to have accepted in lieu thereof the other two policies; and in that letter he stated that the policies were not received, or the envelope inclosing them opened, until Monday morning; and used this additional language: "In the meantime, Sunday, Dec. 2d, a fire broke out in her block. The other adjusters came on, and claim that their policies are not holding, and that yours is." That gave notice to the defendant of the existence of the fire, which, coupled with the notice that they had theretofore received through the other agency, and through the fact that their agent was present, cognizant of the fire, coupled with the additional fact that on the 12th, Walton, the special agent of the company, appeared, and made inquiries and investigations as to the fire, warranted the conclusion of the referee that the defendant had received suitable and timely notice of the occurrence of the fire. Griffey v. Insurance Co., supra; Weed v. Insurance Co., supra. Proofs of loss were made out and transmitted to the defendant, and by it retained, and after they were received no question was made until after the commencement of this action that adequate notice had not been received by the company of the fire, and of the loss occurring in consequence thereof. Hermann v. Insurance Co., supra. In Wilber v. Insurance Co. (Sup.) 1 N. Y. Supp. 312, it was held that, where the defendant had based its refusal to pay upon the allegation that there had been a cancellation of the policy, "the plaintiff was thereby excused from presenting proofs of loss." In O'Reilly v. London Assurance, 19 Wkly. Dig. 147, it was held that, where proofs of loss were retained by a company without any other objection than it was not liable, the defects in the proofs of loss "that any question as to whether they were presented timely" was waived.

Appellant calls our attention to Brown v. Assurance Corp., 40 Hun, 101. In that case the property was destroyed by fire on June 1, 1882, and the first notice of the loss was given July 18th following, when proofs of loss were forwarded to the defendant. In that case no excuse for omitting to give an earlier notice of the loss, or for the delay in sending the proofs, was given, and under the evidence it was held that the notice of loss was not served within the time fixed by the policy. It differs from the case in hand, as the delay here was slight; not over seven days before actual notice transpired, and the agent had immediate notice. Besides, it appeared that the plaintiff was ill at the time of the fire, and taken from the building, and received a great shock to her nervous system, and was illy conditioned to attend to business of this nature; she being a widow, and accustomed theretofore to have charge of her own affairs; and that she was assured by the defendant's agent that notice of the fire had been given to the defendant.

The appellant also calls our attention to Quinlan v. Insurance Co. (Sup.) 15 N. Y. Supp. 317, affirmed 133 N. Y. 356, 31 N. E. 31. In that case no notice was given until after the lapse of 33 days, and the proofs of loss were not made out until 7 months after the fire, and the policy required them to be furnished within 60 days, and

made the furnishing of the proofs a condition precedent to the plaintiff's right of recovery. We think the case is clearly distinguishable from the one in hand.

The learned counsel for the appellant calls our attention to Ermentraut v. Insurance Co. (Minn.) 65 N. W. 635, and insists that it bears directly upon the question of notice. We think the facts upon which the opinion in that case proceeded differ very essentially from the facts in the case before us. In that case Seeley & Co. were the local agents, having the usual authority accorded to local agents; and the only evidence in that case given of the notice of loss, except the sending of proofs of loss to the general managers of the defendant at Chicago on or about October 9th, and not received by them until October 23d, "was to the effect that within a day or two after the loss one of the plaintiffs verbally notified Seeley & Co. that the fire had destroyed the building"; and it did not appear that he requested Seeley & Co. to give or forward notice to the company, or that they promised to do so. The loss occurred on the 12th of August.

The appellant contends that the referee erred in disallowing the question put to Walton, when he was upon the stand, as to whether, when he visited Seneca Falls, on the 12th of December, he was informed by anybody that the plaintiff claimed any loss under this policy. The question was objected to as immaterial and irrelevant, and the objections were sustained, and an exception was taken. This witness subsequently narrated all the knowledge or information he had respecting the policy, and then stated: "I have now stated all the communications that we had concerning this policy from the beginning to the end, and also down to the time the suit was brought, and also all I had to do with it, according to my recollection." We think the ruling complained of worked no harm to the defendant.

Attention has been called to some other rulings during the progress of the trial, which we have looked at, and find no prejudicial error. The learned referee, in an opinion, has recited the facts and the law of the case quite satisfactorily, and we think his findings of fact in his report are sustained by the evidence, and that his conclusions of law are correct.

Judgment affirmed, with costs. All concur.