WATERLOO LUMBER COMPANY and N. J. BROWN, Appellee, v. THE DES MOINES INSURANCE COMPANY, Appellant.

**Insurance:** CANCELLATION OF POLICY. A policy of insurance issued by authorized agents cannot, after delivery and payment of the premium to the agents, be cancelled by a mere direction of the company to the agents to obtain a better rate or take up and return the policy for cancellation; but in the absence of notice to the insured the policy is valid, and is not subject to cancellation by the agents without notice to the insured.

**Same:** CONTRACT: CANCELLATION AND TRANSFER OF RISK. The issuance and delivery of a policy of insurance by authorized agents in a stated sum, and payment to them of the premium, constitutes a completed contract; and thereafter the agents cease to represent the insured in any manner, and they cannot bind him by a subsequent cancellation of the policy and transfer of the risk to another company without his authority.

**Same:** An insurance company cannot relieve itself from liability on a valid policy of insurance for a loss already incurred, by inducing the insured to accept a policy in another company issued without his authority, and affording no indemnity.

**Same:** ISSUANCE OF POLICY: ASSENT OF ASSURED. An agent authorized to issue policies and collect premiums has no authority to issue a policy covering property already destroyed; and a policy written by him in another company as a substitute for one then existing, but not brought to the notice or knowledge of the insured until after the loss, is not a valid contract, and will not work a cancellation of the first policy.

**Same:** LIABILITY OF INSURER. It is essential to the validity of a policy of insurance, issued by another company as a substitute for

one then existing, that the insured assent thereto; and where the assent was not procured until after the property was destroyed the insurer was not liable thereon.

**Appeal:** TIMELINESS OF ACTION: REVIEW. Where objection to the timeliness of an action was in no manner brought to the attention of the trial court it will not be considered on appeal.

*Appeal from Blackhawk District Court.*—HON. F. C. PLATT, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

ACTION at law upon a policy of fire insurance. There was judgment for plaintiff, and defendant appeals. The material facts are stated in the opinion.—*Affirmed.*

*Read & Read,* for appellant.

*Edwards & Longley,* for appellee.

WEAVER, J.—The plaintiff is a lumber dealer at Waterloo, Iowa. The defendant insurance company maintains a recording agency in that city conducted by Jameson & French. Through this agency the policy in suit was issued, and during the period named in such policy the property insured was destroyed by fire. These facts are conceded, but defendant denies liability on the grounds (1) that, when the issuance of the policy was reported by its agents, defendant rejected the risk and canceled the policy, and that same was never in fact delivered or paid for; and (2) that, in violation of a provision of said policy, the plaintiff procured other insurance upon the property without the knowledge or consent of the defendant, whereby the contract of insurance with defendant became void and of no effect.

The facts conceded or well established are as follows: Upon plaintiff's application Jameson & French, defendant's

recording agents, acting within the scope of their authority, issued the policy in suit, and received payment of the stipulated premium. This policy was issued on January 27, 1908, and duly reported by said agents to the defendant at Des Moines. Eight days later defendant addressed a letter to Jameson & French, saying that the rate was inadequate, and, unless a higher rate could be procured, they were directed to take up the policy and return it for cancellation. This demand or direction was received by Jameson & French on February 5, 1908, but was not then reported by them to the plaintiff lumber company. On the same day they entered upon their records a note of the cancellation of the policy, and directed an employee to rewrite the same risk in the Iowa Manufacturers' Insurance Company, which they also represented. Such policy was prepared not earlier than February 5, 1908, but it was antedated as of February 1, 1908, and it is not entirely clear from the record whether the instrument was executed before the property was destroyed by fire on February 7, 1908. As a matter of bookkeeping the defendant's payment of premium which had been credited to the defendant company was transferred to the credit of the Manufacturers' Company. On the morning of February 8, 1908, having learned of the fire, a representative of Jameson & French went to the manager of the plaintiff company, told him that the defendant had asked a cancellation of its policy, and that the agents had on the day before written up another in the Manufacturers' Company to take its place, and upon the strength of such alleged facts demanded an exchange of said policies. The manager replied that he only wanted what was right and to get the insurance for which he had paid, took the policy offered to him, and returned the one previously issued. Thereafter the plaintiff demanded of said agents a return of the policy sued upon and offered to surrender the policy of the Manufacturers' Company.

I.  There is no evidence whatever to support the plea that the policy was never delivered or paid for. The delivery

and the payment are both shown, and neither was disputed upon the trial. We have, then, to consider whether the policy was canceled and defendant released from liability thereon. Jameson & French being recording agents authorized to countersign and deliver policies, it requires neither argument nor citation of authorities to support the proposition that this policy upon delivery to plaintiff became a valid contract of insurance. It is equally clear that such policy could not be effectually canceled by notice or instruction from the company to its own agents that the premium was inadequate, and that, unless a higher rate could be obtained, the policy must be taken up. The insured could, of course, authorize the agents to act for him in receiving notice of cancellation and in procuring other insurance in case his policy was thereafter canceled, but the giving of such authority in this case was nowhere shown, nor is it to be fairly implied from the record. It should also be here remembered as having material bearing upon this controversy that the defendant did not attempt nor order an unconditional cancellation of the policy. Addressing its agents under date of February 4, 1908, it called their attention to the character of the risk disapproving the rate charged as being insufficient, and adding: "We consider it well worth one and one-half per cent. for three years, fire and lightning, and unless you can obtain this rate we will ask you to very kindly take up our policy and return it to us for cancellation." This direction quite clearly contemplates an effort on the part of the agents to obtain the increased premium, and that cancellation should only follow the failure of such effort. So far as shown, the agents did not consult the plaintiff on the subject or attempt to induce it to meet the company's demand. This even without respect to the lack of due notice to the insured would seem to be not so much an act of cancellation as it was a proposition or threat of cancellation to be made upon the failure of the insured to comply with the demand for a greater premium. The case thus pre-

1. INSURANCE: cancellation of policy.

sented is similar in principle to the one decided in *Van Tassel v. Insurance Co.*, 151 N. Y. 130 (45 N. E. 365). There the plaintiff held a policy for $10,000 which was renewed or extended for a year. A week later the company addressed a letter to the agent, saying the risk was declined for $10,000, but that the company would renew for $5,000 if wanted, and that the risk would not be held binding for more than $5,000. No reply was made to this communication, and a loss was incurred within six days thereafter. Suit being brought, defendant sought to escape liability on the ground that the policy as issued had been canceled, and that the proposition or offer to renew for the smaller amount had not been accepted. The defense was overruled, it being held that the letter constituted no more than a proposed cancellation, and not a cancellation in fact. See, also, *Chrisman v. Insurance Co.*, 75 Mo. App. 310.

The point is made in argument that, plaintiff having applied to Jameson & French for insurance without designating any particular company in which the policy was desired, the agents were authorized to place it in any responsible company represented by them, and that, upon notice to them of the cancellation of such policy, it was within the scope of their implied authority to place the risk with some other insurer. With this contention we are unable to agree. Plaintiff did not deal with Jameson & French as mere soliciting agents to present its application to different companies in succession until one was found willing to accept the risk. They were, as we have seen, recording agents authorized to issue policies for the company. Plaintiff applied to them for insurance in a stated sum. They furnished it, and plaintiff paid for it. The contract was complete, and thenceforward these agents ceased in any manner to represent the insured. If the defendant thereafter undertook to cancel the policy, it was a new and independent transaction, in which its agents could not represent nor bind the plaintiff without special authority so

2. SAME: contract: cancellation and transfer of risk.

to do, or a previous course of dealing between such parties from which the authority may be implied. *Lumber Co. v. Dans,* 95 Wis. 226 (70 N. W. 84, 37 L. R. A. 131) ; *Hartford Ins. Co. v. McKenzie,* 70 Ill. App. 615; *Commercial Co. v. Urbansky,* 113 Ky. 624 (68 S. W. 653) ; *Clark v. Insurance Co.,* 89 Me. 26 (35 Atl. 1008, 35 L. R. A. 276) ; *Partridge v. Insurance Co.,* 13 App. Div. 519 (43 N. Y. Supp. 632) ; *Merchants' Ins. Co. v. Shults,* 8 Kan. App. 798 (57 Pac. 306) ; *Snedicor v. Insurance Co.,* 106 Mich. 83 (64 N. W. 35) ; *Edwards v. Insurance Co.,* 101 Mo. App. 45 (73 S. W. 886) ; *Mutual v. Insurance Co.,* 84 Va. 116 (4 S. E. 178, 10 Am. St. Rep. 819) ; *Martin v. Insurance Co.,* 106 Tenn. 523 (61 S. W. 1024) ; *Grace v. Insurance Co.,* 109 U. S. 278 (3 Sup. Ct. 207, 27 L. Ed. 932) ; *Insurance Co. v. Sammons,* 110 Ill. 166; *Stilwell v. Insurance Co.,* 72 N. Y. 385; *Hermann v. Insurance Co.,* 100 N. Y. 411 (3 N. E. 341, 53 Am. Rep. 197) ; *Broadwater v. Lion Co.,* 34 Minn. 466 (26 N. W. 455). The precedents cited to the contrary effect—*Arnfeld v. Insurance Co.,* 172 Pa. 605 (34 Atl. 580) ; *Kooistra v. Insurance Co.,* 122 Mich. 626 (81 N. W. 568) ; *Standard Oil Co. v. Insurance Co.,* 64 N. Y. 85—and others of that class, are not in point. In each of these cases the person receiving the notice was the admitted agent or broker of the insured or the course of business between the insured and the company's agent for a considerable period had been such as to justify an implication of authority to act in the premises.

Here there is no claim of express authority, nor is there any proof of prior transactions or course of business from which a finding of implied authority could be sustained. The notice to Jameson & French, not having been communicated to plaintiff till after the loss had occurred, was necessarily unavailing to relieve the defendant from its liability, unless we are required to hold as a matter of law that plaintiff's act in receiving the policy in the Manufacturers' Company and giving up the one in suit is an act which bars or estops it from denying the effectiveness

3. SAME.

of the alleged cancellation. Counsel argued that if plaintiff had been informed of the change in the policies before the loss occurred, and had accepted the one last written in exchange for the first, he would be held to have ratified the act, and could not recover from the defendant. This is, of course, true, but it does not follow that such an exchange or attempted substitution made after the loss would have the same effect. In the case supposed by counsel the plaintiff's ratification having been made while the insured property was still in existence, the Manufacturers' Company would clearly be bound by the contract made by its agents and the defendant discharged from further liability. In the case before us, the alleged ratification cannot upon any theory be said to have taken place until after the loss occurred when the insured property had ceased to exist, and the agents could no longer bind the Manufacturers' Company by any attempt to insure it at that time. Defendant cannot relieve itself from liability for loss already occurred by inducing the insured to receive the alleged policy of another company issued without authority and affording no indemnity whatever. Decisions touching upon transactions of this kind are quite numerous.

It has frequently been held that an agent has no authority to insure property already destroyed and a policy written and intended as a substitute for a subsisting policy in another company, but not delivered or brought to the notice of the property owner until after loss, is not a valid contract of insurance. *Stebbins v. Insurance Co.*, 60 N. H. 65; *Clark v. Insurance Co.*, 89 Me. 26 (35 Atl. 1008, 35 L. R. A. 276); *Kerr v. Insurance Co.*, 117 Fed. 442 (54 C. C. A. 616). In the last-cited case, as in the case at bar, the insurer in the first policy, the Phœnix Company, notified its agent to cancel it. The agent Rohrer made the entry in his books, transferred the premium credit to the Milwaukee Company, and wrote up a policy in the last-named company ready for deliverey to the insured, who was given no notice of the transaction until

4. SAME: issuance of policy: assent of assured.

after a fire had destroyed the property when an actual delivery of the policy was made. In holding that such acts did not work a cancellation of the first policy the court reviews the precedents to which we have already called attention, and says:

These cases hold that the written but undelivered policy never matured into a contract for insurance, and that liability upon the subsisting policy which was intended to be replaced was fixed by the burning of the property while it was still in force. The acts of bookkeeping of Rohrer in marking cancellation on his office record of the Phoenix Company's policy and transferring in his accounts the credit for premium from that company to the defendant company, all done in anticipation of his purposed delivery of defendant company's policy in replacement for the expected surrender of the policy of the Phoenix Company, were futile, and affected no existing rights or liabilities. *Insurance Co.* v. *Turnbull,* 86 Ky. 230, 237 (5 S. W. 542); *Insurance Co.* v. *McKenzie,* 70 Ill. App. 615, 623. In the present case it clearly appeared that at the time of the burning of the elevator the policy of the Phoenix Insurance Company was a valid contract of insurance, which had never been surrendered nor conceled; and that plaintiff, the insured, then held it as such. The policy of the defendant company was then an undelivered writing, not yet a contract, and because of the destruction of the property while it was in that condition it never became a contract.

The *Clark* case cited from the Maine court arose upon a state of facts very similar to those we have here to deal with. The plaintiff applied to the agents for insurance which they wrote in the Commercial Union Company. A few days later that company wrote the agents to cancel the policy. Without notifying the insured, they directed their clerk to write another policy in the Insurance Company of North America. That policy was antedated, as was done in this case, and credit for the premium paid was transferred to the last-named company. Before the change was reported to the insured, the property burned. Thereafter the agent induced

the insured to receive the last policy and give up the one first written, assuring him that it would be all right. As a matter of safety separate actions were brought on these policies setting up the facts of the attempted cancellation and change. Speaking with reference to the action upon the policy last issued, the court says:

The agent had no authority, express or implied, to effect any insurance for the plaintiff beyond what had already been completed. His authority was to procure for the plaintiff $1,200 insurance in one of the companies which he represented, and, having done that to the acceptance of the plaintiff, his agency so far as the plaintiff was concerned was accomplished, and he had no authority to make further insurance on the behalf of the plaintiff. Nor was it the intention even of the agent to effect additional insurance. It was, at the most, an attempt to transfer a risk from one company to another at the instance of the company then carrying the risk and without the consent of the insured. The attempted cancellation and the effort to place the risk in the defendant company were parts of the same transaction with no consent of the assured. Unless the cancellation was valid, the second risk did not attach. It is not pretended that plaintiff was aware of any intention or attempt at cancellation until the morning after the loss occurred. Until the five days' notice provided in the policy should be given him, or until he should consent to such cancellation, the first policy would remain in force, and the second would not become operative as a legal subsisting contract.

Quite in point and to the same effect are *Massasoit v. Assurance Co.*, 125 Mass. 110; *Wilson v. Insurance Co.*, 140 Mass. 210 (5 N. E. 818); *Stebbins v. Insurance Co.*, 60 N. H. 65.

If it be said that Jameson & French, being agents of the Manufacturers' Company, its assent to the issuance of the second policy must be assumed, it is none the less true that the assent of the plaintiff was essential to the existence of a completed contract, and, if such assent was not given or procured until after the subject of

5. SAME: liability of insurer.

insurance had been destroyed, the company would not be bound thereby. *Mutual v. Young,* 90 U. S. (23 Wall.) 85 (23 L. Ed. 152); *Michigan Pipe Co. v. Insurance Co.,* 92 Mich. 493 (52 N. W. 1070, 20 L. R. A. 277), and cases already cited. Counsel's illustration of a case in which the insurance companies dealing directly together, the second company agreeing to take the risk which is being carried by the first company and loss ensues before the policy is delivered, does not cover the case at bar. In such instance there is a complete contract of reinsurance for the benefit of the first insurer which may be enforced. But the first company is in no manner relieved from its obligation to the property owner, although it is in position to protect itself against ultimate loss by calling upon the second company for the promised indemnity. *Massasoit v. Assurance Co.,* 125 Mass. 110.

Neither company is empowered to speak or act for the holder of the first policy or to bind him to an acceptance of the second policy, and he is equally powerless to bind the second insurer by a consent given after a loss has occurred. But two cases are brought to our attention from which any apparent support for defendant's position can be extracted—*Larsen v. Insurance Co.,* 208 Ill. 166 (70 N. E. 31); *Arnfeld v. Insurance Co.,* 172 Pa. 605 (34 Atl. 580)—and a careful reading of these demonstrates that neither goes to the extent claimed for it. In the *Arnfeld* case plaintiff employed a broker to procure insurance and the broker obtained a policy from the Guardian Company. This company thereafter notified the broker of its purpose to cancel the policy within five days. Acting upon the notice, the broker at once procured a policy in the Queen Company, and notified the Guardian Company thereof, and assured it that it was relieved from further liability. The insured accepted the policy from the Queen Company, and that company conceded its liability, and paid its proportion of the loss. Action was also brought on the first policy, and the essence of the decision upon appeal in that case is that the court should have instructed the jury

that if the second policy was taken as a substitute for the first, and not merely as additional insurance, and if the second company accepted responsibility and paid its share of the loss, then the first policy should be treated as canceled, and no recovery could be had thereon. Of the soundness of this proposition there can be no dispute, and it is in no manner inconsistent with the conclusions we have above announced. The *Larsen* case, decided by the Illinois court, is substantially similar in its facts to the *Arnfeld* case, in that, after being notified of the exchange of policies, the insured not only assented thereto, but presented its claim to the substituted company, which acknowledged its liability and paid its proportion of the loss. The insured having thus received the indemnity promised in the policy last issued, the court very properly says: ''It cannot now lie in him to say that there was no consideration for the surrender of the policy issued by the appellee and that appellee is not relieved from liability by that transaction.'' Without further consideration of the authorities, we have to say that we are quite clear that there was never any efficient cancellation of the policy issued by the defendant, nor was there a valid substitution therefor of the policy of the Manufacturers' Company. For the reasons already stated, it must be held that the defense based upon an alleged avoidance of the policy by the act of the plaintiff in procuring additional insurance is without any support in the record.

II.   The defendant further insists that the judgment below must be reversed because the action was prematurely begun. This fact is said to affirmatively appear from the printed record, a statement which the appellee

6. APPEAL: timeliness of action: review.  questions. We have not undertaken to satisfy ourselves in that respect because it appears to be unnecessary. The objection to the timeliness of the action was not raised in pleading or by motion in arrest, nor does it appear to have been in any manner called to the attention of the trial court. Under such circumstances, it cannot be

raised for the first time in this court. *Petty v. Mutual Ins. Co.*, 111 Iowa, 358; *Van Camp v. Keokuk*, 130 Iowa, 716; *Borghart v. Cedar Rapids*, 126 Iowa, 313. The objection is quite certainly not one which goes to the jurisdiction of the court, and the general rule that other objections not in any manner raised in the trial court will not be considered on appeal is so general and universal that citation of authorities in support thereof is not required. The action is at law. The burden was upon defendant to make good its several defenses, or some of them, and the findings of the trial court upon all disputed matters of fact is in favor of the plaintiff.

We find no reversible error in the record, and the judgment below is therefore *Affirmed*.

SHERWIN, J.—By mistake an opinion written upon the original submission of this case reversing the judgment below was released and published pending a petition for rehearing. See *Waterloo Lumber Co. v. Ins. Co.*, 150 Iowa, 607.

Said opinion is hereby ordered withdrawn.