THE MERCHANTS' INSURANCE COMPANY OF NEWARK

*v.*

THE UNION INSURANCE COMPANY OF SAN FRANCISCO.

*Filed at Ottawa June 13, 1896.*

1. INSURANCE—*when one procuring insurance acts as agent for owners.* An insurance agent who, in pursuance of general directions given him by the owners of property, procures a second policy on the same from a company not represented by him, through an agent who was in the habit of exchanging policies with him and who charged the premiums to him, acts, in getting such insurance, solely as the agent of the property owners.

2. SAME—*agreement of one company with another to issue policy—how enforced—parties.* The agreement of an insurance company made with the agent of another company, which latter has ordered its policy on certain property canceled, to the effect that the former company will issue its policy on such property and assume the risk, in pursuance of which agreement the policy is written and registered but not delivered, creates no liability for a loss occurring before the first policy is canceled or the latter delivered which can be enforced in the name of the company issuing the first policy, but the suit must be in the name of the owners of the property.

3. SAME—*assignment of undelivered policy—subrogation.* An agreement by one insurance company with another to issue its policy upon property in lieu of a policy of the latter, will not enable the latter company to recover in its own name, by subrogation, the amount of a subsequent loss paid, although the company making such agreement had the policy executed and ready for delivery when the loss occurred, and although the owners of the property, upon payment of the loss, assigned to the paying company all rights in the undelivered policy.

4. SAME—*what is not a re-insurance.* Agreement by one insurance company with the agent of another to take a risk and issue a policy to certain property owners in lieu of one which the latter company has ordered canceled, is not a contract of re-insurance of such canceling company against its risk, so as to enable it to reimburse itself, by suit in its own name, for payment of a loss occurring before the first policy was actually canceled and the latter delivered.

*Merchants' Ins. Co.* v. *Union Ins. Co.* 58 Ill. App. 611, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. EDWARD F. DUNNE, Judge, presiding.

HOYNE, FOLLANSBEE & O'CONNOR, for appellant.

BATES & HARDING, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee brought this suit in assumpsit against appellant, and, while the declaration contained the common counts, the grounds upon which a recovery was sought were stated in the special count of the amended declaration. It was therein alleged that on August 2, 1889, the defendant, by its agent, applied to the plaintiff for insurance to the amount of $2000, for the term of one year, on the steamer "Liberty," owned by C. A. Freeman and E. B. Kellogg; that the plaintiff issued its policy and delivered the same to said agent of defendant; that no part of the premium, amounting to $30, was paid to plaintiff, but was paid to defendant by Freeman & Kellogg, owners of the vessel; that afterwards, on August 7, 1889, plaintiff ordered said policy canceled, and on August 9, 1889, the agents of plaintiff applied to said agent of defendant for the cancellation and return of said policy; that thereupon it was agreed by defendant that it would immediately assume said risk of $2000 and release the plaintiff from all liability by reason of said policy, and would immediately issue to said Freeman & Kellogg its own

policy and take up plaintiff's policy; that said defendant entered said risk upon its policy register, and then and there assumed the same in place of said plaintiff, and received and retained the premium therefor which had been theretofore paid to it; that on August 11, 1889, the said steamer burned; that said defendant had not then returned plaintiff's policy, but after said fire again agreed to hold plaintiff free and clear from any liability; that the defendant did not keep, perform or fulfill any of its said agreements, by reason whereof plaintiff was obliged to and did pay said Freeman & Kellogg the sum of $1900 for and on account of said loss which should have been paid by said defendant; that by reason of said payment plaintiff became subrogated to the rights of Freeman & Kellogg against defendant on account of the loss of said steamer, and that by reason of said payment said Freeman & Kellogg, in writing, assigned and subrogated to plaintiff all their rights against defendant by reason of said loss. There was a trial and a recovery for $2335.44. The Appellate Court has affirmed the judgment.

At the trial it was proved that Constant Martin was engaged in the insurance business at Green Bay, Wisconsin, and that Freeman & Kellogg, the owners of the steamer "Liberty," had obtained a policy through him from the Sun Fire Insurance Company of London, to the amount of $3000, upon the steamer. A few days later they applied to him to procure an additional policy of $2000, and he agreed to procure it if he could. He applied for such a policy, through his son, J. C. Martin, to A. A. Warren, who was agent for several insurance companies, among which was the plaintiff. The policy was issued on behalf of plaintiff by Fred Warren, a clerk in the office of his father, A. A. Warren, and was delivered to Martin, who gave it to Freeman & Kellogg. The premium amounted to $30, which had been paid to Martin. These insurance agents were in the habit of exchanging policies and accounting for them to each other, and the premium was

credited by Martin to Warren. The plaintiff, by letter dated August 8, 1889, ordered the policy canceled. In pursuance of that direction Fred Warren called the next day at Martin's office and stated that plaintiff ordered him to cancel the policy, and to get it up as soon as possible. Constant Martin, J. C. Martin, and the book-keeper, J. F. Lyon, were present at that time. Martin was authorized by defendant to issue policies. The only disputed matter of fact relates to the conversation had at that time, but, assuming plaintiff's version as correct, it was substantially as follows: It was there agreed that the risk should be placed with defendant company, and Warren said that would be all right,—that he only wanted to have the plaintiff's policy taken care of. In testifying he could not positively state that Warren said he would take up plaintiff's policy that day, but they agreed to place the risk with the defendant company. It was also proved that after the fire, which occurred on the 11th, A. A. Warren and Fred Warren called at Martin's office and found the policy recorded on the policy register, dated August 10, and Lyon said that the policy had been written and recorded in the docket and had gone through the regular form, and that notice had been given to the defendant of the issuing of the policy. After the fire defendant sent a telegram to Martin, ordering him to cancel its policy. Lyon and J. C. Martin were authorized to transact the business of the insurance agency of Constant Martin. Plaintiff paid Freeman & Kellogg $1900 in full payment of its policy, and took an assignment of all interest in the contract or policy of insurance upon said steamer, and of all their rights under said contract with defendant on its policy of insurance.

Upon this evidence the defendant asked the court to instruct the jury to find the issues for the defendant, but the court refused to so instruct.

There was no evidence tending to sustain the averments of the declaration that the defendant, through its

agent, obtained the policy from the plaintiff, or that the premium for that policy was originally paid to the defendant by Freeman & Kellogg. Martin had been authorized by Freeman & Kellogg to procure insurance for them, and they gave him the amount of the premium for that purpose and as their agent. The application to plaintiff was made by Martin, as their agent, and not in any sense as an agent of the defendant. Notice of cancellation was not given by Warren to Martin as the agent of the defendant, which had not been connected in any way with the insurance contract and had no concern in the matter whatever.

The charge of the declaration which the evidence tended to sustain was, that the defendant agreed to take the insurance risk of $2000 and issue its own policy to Freeman & Kellogg. The testimony of Fred Warren was that such was the agreement, and the evidence showed that the entry was made on the policy register and that it was duly reported to the company, and was regarded as in force, as was shown by the telegram from the defendant, subsequently to the fire, ordering it canceled.

The argument for appellee in support of the judgment is, that by this agreement the policy of plaintiff was canceled; that Martin was authorized by Freeman & Kellogg to procure the insurance in such companies as he might select, and to keep the steamer insured for one year, and that his relation to Freeman & Kellogg was such, that when the plaintiff, upon notice of the insurance, rejected it, the notice to him of rejection and cancellation was sufficient, and he was authorized to place the risk with the defendant. It is said, also, that Freeman & Kellogg expressly ratified the arrangement by assigning to the plaintiff all their rights thereunder and authorizing the plaintiff to proceed and enforce the agreement. This argument is based upon the case of *Dibble* v. *Northern Ins. Co.* 70 Mich. 1. If, as claimed, the facts shown are sufficient to establish such authority

162—12

in Martin, then, under the rule in the case cited, the contention would be correct.    But the trouble with that position is, that the liability to Freeman & Kellogg could not be enforced in this suit in the name of the plaintiff.    If the defendant became liable to Freeman & Kellogg by reason of an agreement to take the risk and by putting it upon its policy register, that liability could be enforced only in the name of Freeman & Kellogg.    The assignment would not give the plaintiff a right to recover in its own name.    Plaintiff apparently understood that the liability was of the same nature as is claimed in argument, since it took an assignment of the claim.    In that view of the alleged liability the instruction asked should certainly have been given.

While the liability of the defendant is claimed in the argument to be of the character above stated, yet there is an occasional allusion to suit being upon plaintiff's own rights under the contract, as well as upon rights acquired by the assignment from Freeman & Kellogg. We see no ground in the evidence for such claim, under the averments of the declaration.    The agreement was in no sense a contract of re-insurance with the plaintiff. Such a contract would contemplate a continuing liability of the plaintiff upon its policy.    The only evidence here was, that it was agreed that defendant would issue its policy to Freeman & Kellogg, and not that it would re-insure the plaintiff against its liability under the policy. The claim of plaintiff is that the defendant's policy was to take the place of the plaintiff's.

The evidence did not show a right of action in this suit.    The judgments of the Appellate Court and the circuit court will be reversed and the cause remanded to the latter court.                    *Reversed and remanded.*