COMMERCIAL CASUALTY INS. CO. v. COLUMBIA CASUALTY CO. et al.—125 S. W. (2d) 493.

Middle Section.   Sept. 24, 1938.

Petition for Certiorari Denied by Supreme Court, March 4, 1939.

Manier & Crouch, of Nashville, for appellant Commercial Casualty Co.

C. Wade Wilkes and Bass, Berry & Sims, all of Nashville, for appellee Columbia Casualty Co.

CROWNOVER, J. This is a suit by the Commercial Casualty Insurance Company against the Columbia Casualty Company to recover $5050.90, and interest thereon, the amount paid by the Commercial Casualty Insurance Company in settlement of a damage suit arising out of an automobile accident, where the insured, George W. Carter, had procured a policy of liability insurance in the Commercial Casualty Insurance Company, and the local agent of the Commercial Casualty Insurance Company had attempted to cancel the policy and substitute for it a policy in the Columbia Casualty Company.

The Columbia Casualty Company insisted that it had never entered into or consummated any contract with Carter, the insured, and that no contract had been entered into between it and the complainant, and it denied liability.

The Chancellor found and decreed:

"1. That the complainant, Commercial Casualty Insurance Company, issued and delivered a policy of insurance to one George Carter, and that said policy was in full force and effect and had not been cancelled at the time of the accident in which Carter's automobile covered by said policy was involved.

."2. That the defendant Columbia Casualty Company never issued and delivered a policy of insurance in favor of the said George Carter and no contractual relation existed between the said defendant company and the said Carter at the time of said accident.

"3. That no contract was made or existed between the complainant and the defendant Columbia Casualty Company whereby the said defendant company was obligated to indemnify or reimburse the complainant for any sums paid by complainant on behalf of the said George Carter or on account of said accident.

"And the court being of the opinion that the allegations contained in the bill have been fully met by the allegations in the answer, and that the allegations in the bill are not supported by the proof, and the complainant through its counsel stating in open court that it did not insist on a decree against the defendant E. B. Sulzbacher.

"It is ordered, adjudged and decreed by the Court that complainant's bill be, and the same is, dismissed."

The complainant excepted to the decree of the Chancellor and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in holding that the Carter policy in the Commercial Casualty Insurance Company was in force and had not been cancelled at the time of the accident in which Carter's automobile, insured by said policy, was involved.

(2) The Chancellor erred in holding that the Columbia Casualty Company never issued and delivered a policy of insurance in favor of the said Carter, and no contractual relation existed between that Company and Carter at the time of said accident.

(3) The Chancellor erred in holding that no contract was made or existed between complainant and defendant.

(4) The Chancellor erred in failing to hold that an agreement was made between the Columbia Casualty Company and Sulzbacher for the benefit of the Commercial Casualty Company.

In June, 1928, E. B. Sulzbacher was general agent for the State of Tennessee for the Commercial Casualty Insurance Company, and

carried on the business in the _name of the Sulzbacher Insurance Service.

Victor B. Hartman was an insurance solicitor, or broker, in Sulzbacher's office. He solicited automobile liability insurance from George W. Carter and obtained his application.

The Commercial Casualty Insurance Company, through the Sulzbacher Insurance Service, issued, on June 5, 1928, to George W. Carter a policy of insurance covering his automobile, wherein the Commercial Casualty Insurance Company agreed to indemnify Carter against loss for personal injury and property damage to others.

Hartman delivered the policy to Carter, who requested him to take it back to the office and put it in the safe, which was done.

Carter paid the premium of $35 in two payments of $17.50 each, one on July 3rd and one on August 3rd.

On August 8, 1928, the Commercial Casualty Insurance Company wrote Sulzbacher a letter giving him thirty days' notice of cancellation of his agency contract. In this letter it was suggested that Sulzbacher make a connection with some other insurance company and endeavor to substitute policies of that company for Commercial Casualty Insurance Company policies issued by Sulzbacher. The letter stated: "We want to cooperate with you in every way we can and would suggest that when you make your new connection you arrange to reinsure the business you have with us in your new company. We will gladly cancel the business you have in force with us on a pro rata basis, so that your business will all be in one company, which you can appreciate will be to your best interests."

On September 10, 1928, Sulzbacher entered into a written general agency contract with the Columbia Casualty Company to represent it as general insurance agent in Nashville.

On September 27, 1928, Sulzbacher wrote the Commercial Casualty Insurance Company that he was cancelling as of September 26, 1928, a number of its policies and rewriting them in the Columbia Casualty Company, and enclosed a list of them which included the policy issued to Carter.

Sulzbacher issued a policy in the Columbia Casualty Company, dated September 26, 1928, insuring Carter's automobile for one year.

The policy was put in Salzbacher's safe.

It appears that the Commercial Casualty Insurance Company's policy insuring the same automobile was left in the safe or kept somewhere else in Salzbacher's office.

Nothing was said to Carter about the transaction. He did not agree to the issuance of the Columbia Casualty Company's policy or that it should be substituted for the Commercial Casualty Insurance Company's policy, or accept the same, or agree to the cancellation of the Commercial Casualty Insurance Company's policy.

Sulzbacher's office records show that he transferred the credit for the premium of $35, on his books, from the Commercial Casualty Insurance Company to the Columbia Casualty Company.

He testified that in cancelling the Commercial Casualty Insurance Company's policy he did not pay that company the earned premium for the period of June 5th to September 26th, about $9, or ask Carter to pay it.

On October 5, 1928, George W. Carter was involved in an automobile accident, where one man was killed and three were injured, and property was damaged.

The Sulzbacher agency reported the accident first to the Columbia Casualty Company and then to the Commercial Casualty Insurance Company.

Suits were filed against Carter.

The Commercial Casualty Insurance Company defended the suits, notifying the Columbia Casualty Company that it was doing so with full reservation of its rights, and paid the sum of $5,050.90 in settlement of same.

1. The evidence is uncontroverted that the policy in the Commercial Casualty Insurance Company was not cancelled. There was no agreement between Carter and the Commercial Casualty Insurance Company to cancel the policy, and no notice had been given him. He had no notice or knowledge of the transfer of the premium on Sulzbacher's books.

"Where a valid contract of insurance has been effectuated, the company cannot cancel the policy without the consent of the insured, except where it may be permitted to do so by statute or by a reservation in the policy itself." 32 C. J., 1245-1246, sec. 431.

The burden of proving that there has been a cancellation of a policy rests on the party asserting it. 32 C. J., 1262, sec. 458.

2. It appears that a policy covering this automobile was issued by the Columbia Casualty Insurance Company, but the evidence is unsatisfactory as to whether it was issued before the accident or afterwards. But whether a policy was ever issued, is not material in this case, as the evidence is uncontroverted that Carter did not apply for the policy, had no knowledge of its issuance, never accepted it; that he was insured in the Commercial Casualty Insurance Company, which policy he had not cancelled; and that he refused to ratify the issuance of the policy in the Columbia Casualty Company after the accident. There was, therefore, no contract between Carter and the Columbia Casualty Company, even if a policy was issued dated September 26, 1928.

The contract of insurance is purely a personal contract between the insured and the insurance company. 32 C. J., 1092, sec. 175; 14 R. C. L. 1365, sec. 535; John Weis, Inc. v. Notie Reed, Tenn.

App., 118 S. W. (2d), 677, 682; Hackney Co. v. Wood, 3 Tenn. App., 421.

"The assent of insured obtaining a fire policy from one insurer to a policy from another insurer as a substitute for the first policy is essential to the existence of a completed contract evidenced by the second policy, and, where such assent is not procured until after [a loss], the second insurer is not bound." Waterloo Lumber Co. v. Des Moines Ins. Co., 158 Iowa 563, 138 N. W., 504, 51 L. R. A. (N. S.), 539.

■ "An insurance agent has no right·to· cancel a policy and place insured in any other company without the authority or request of insured." 32 C. J., 1244, sec. 427.

■ "A policy written and intended as a substitute for a subsisting policy in another company, but not delivered or brought to the notice of the property owner until after loss, is not a valid contract of insurance." Waterloo Lumber Co. v. Des Moines Ins. Co., 158 Iowa, 563, 138 N. W., 504, 506, 51 L. R. A. (N. S.), 539, 544; Clark v. Insurance Company of N. A., 89 Me., 26, 35 A., 1008, 35 L. R. A., 276.

■ 3. The Commercial Casualty Insurance Company's officers who testified made no attempt to show that any contract was entered into between it and the Columbia Casualty Company, and the Columbia Casualty Company insists that no contract was made.

Sulzbacher testified that some arrangement was made by him with the Columbia Casualty Company whereby the risks or business which he had in force in the Commercial Casualty Insurance Company would be reinsured in the Columbia Casualty Company, and he attempts to show that an oral agreement was made between himself and the Columbia Casualty Company to release the Commercial Casualty Insurance Company from liability on all policies in Tennessee; which the Columbia Casualty Company denies; but we hold there was no such agreement made and nothing· was done to carry out such an agreement.

William B. Mann, superintendent of agencies for the Columbia Casualty Company at that time, testified that Sulzbacher proposed some arrangement whereby the Commercial Casualty Insurance Company might be relieved of its liability at once and its liability assumed by the Columbia Casualty Company, but he rejected it unqualifiedly.

All of Sulzbacher's correspondence with both companies and his testimony show that the·plan he attempted to carry out was to cancel the Commercial Casualty Insurance Company's policies and· issue new policies in the Columbia Casualty Company and to substitute them for the Commercial Casualty Insurance Company policies. Under this system the policies in the Columbia Casualty Company became original insurance and not reinsurance. Excelsior Fire Ins.

Co. v. Royal Ins. Co., 55 N. Y., 343, 14 Am. Rep., 271; Merchants' Ins. Co. v. Union Ins. Co., 162 Ill., 173, 44 N. E., 409.

There was no connection or privity of contract between the Commercial Casualty Insurance Company and the Columbia Casualty Company.

"Reinsurance is an insurance effected by an insurer against the risk that he has previously assumed . . . in order to indemnify the first insurer against his risk, both policies being in existence at the same time." 33 C. J., 43-44, sec. 715.

"A contract of reinsurance is really one of indemnity against the risk incurred by reinsured in the original insurance." 33 C. J., 45, sec. 717; Royal Ins. Co. v. Vanderbilt Ins. Co., 102 Tenn., 264, 52 S. W., 168.

But, "where a policy is canceled and a new policy is issued by another insurer directly to the original policy holder, the substituted policy is one of original insurance and not reinsurance. Excelsior Fire Ins. Co. v. Royal Ins. Co., 55 N. Y., 343, 14 Am. Rep., 271" 33 C. J., 44, note 47 (a); Merchants' Ins. Co. v. Union Ins. Co., 162 Ill., 173, 44 N. E., 409.

"The term 'reinsurance' is sometimes applied to a contract between two insurers by which the one assumes the risks of the other and becomes substituted to its contracts, so that, on the assent of the original policyholders, the liability of the first insurer ceases and the liability of the second is substituted." 33 C. J., 44, sec. 715.

On October 1, 1928, Sulzbacher wrote the Columbia Casualty Company that he would cancel on pro rata basis policies including the Carter policy, to which the Columbia Casualty Company replied by wire, on October 1st, "Not expedient for Columbia to assume unexpired risks written for pro rata terms originating coverage dated prior to July 1st . . . Imperative therefore you cancel binders for risks earlier than July or write policies for full terms." This telegram was confirmed by letter of the same date. So, in compliance with this instruction, Sulzbacher said he wrote the Carter policy for one year, on September 26, 1928. It was received at the home office on October 8, 1928.

There is nothing to show that the policy was issued before the accident, except the date on the policy, and it is not shown when Sulzbacher sent the premium for Carter's policy to the Columbia Casualty Company.

Sulzbacher testified that the Columbia policy when written was put on the desk of the agent whose duty it was to "switch" it for the Commercial Casualty Insurance Company's policy, but he didn't substitute it and the policy was never delivered to Carter.

We gather from all the correspondence between Sulzbacher and the two insurance companies and the testimony that the agreement was

to the effect that the Commercial Casualty Insurance Company would cancel its policies, and that they would be rewritten in the Columbia Casualty Company. The bill alleges these facts and relies on this theory of liability. The complainant's letter of August 8, 1928, means that this procedure should be followed. Sulzbacher's telegram on September 28, 1928, says: "We are cancelling practically all May, June and July" etc., and his letter of same date says: "We have cancelled as of September 26th and rewriting same in the Columbia Casualty as per Mr. Howard's letter of August 8th." But he had done neither for Carter's policy, and this letter was not true with respect to that policy; but it does show what they were attempting to do.

There was no agreement for the Commercial Casualty Insurance Company to transfer its policies to the Columbia Casualty Company, and no agreement for the Commercial Casualty Insurance Company to retain its policies and reinsure the same in the Columbia Casualty Company.

Both companies were evidently acquainted with the proper procedure of cancellation and rewriting policies, such as giving notice of cancellation to the insured, and of the application of the insured and his acceptance of the policy in the new company. They knew that if those requirements were not properly done there could be no legal cancellation of the old policy, and no risks incurred by the new company in the absence of an agreement to this effect; and they evidently had these things in mind and contemplated that the cancellation and rewriting of the policies would be legally done.

▮▮ There is no right of action in favor of the original policyholders under a contract for reinsurance unless the contract for reinsurance between the two insurers expressly so provides (33 C. J., 57, 58, secs. 735 and 736; 33 C. J., 62, sec. 749); and there is no right of action in favor of an insurance company as reinsured unless the contract provides for reinsurance in its favor. It has no right of action on a new policy made payable to the original insured in the absence of an agreement to this effect, and certainly it has none on a policy in favor of an original insured where the policy was never delivered or accepted. There is no privity of contract in either instance. Excelsior Fire Ins. Co. v. Royal Ins. Co., 55 N. Y., 343, 14 Am. Rep., 271; Merchants' Ins. Co. v. Union Ins. Co., 162 Ill., 173, 44 N. E., 409.

Had these companies intended to enter into a contractual relationship for reinsurance they would not have left it to be made by desultory correspondence and verbal agreements with a local agent in a foreign city, an agent in whom neither company had full confidence. Large insurance companies having much experience do not do business of this magnitude in this manner. It would be much out of

the ordinary course of business for a large insurance company to enter into a verbal agreement for reinsurance of policies involving risks amounting to approximately one million dollars before it had inspected the risks or had information about the policyholders.

The Chancellor held that the Columbia Casualty Company made no such agreement, and only agreed to rewrite the policies that had been cancelled, as stated in all the correspondence, and we agree with him.

We therefore overrule all the assignments of errors and affirm the decree dismissing the bill. The costs of the cause including the costs of the appeal are decreed against the Commercial Casualty Insurance Company and the surety on its appeal bond.

Faw, P. J., and Felts, J., concur.