AMERICAN INSURANCE COMPANY, Defendant-Appellant, v. HOMER TAYLOR, RUBY TAYLOR and CITIZENS BANK OF ALBANY, KENTUCKY, Plaintiffs-Appellees. —367 S. W. (2d) 300.

Middle Section, at Nashville. October 26, 1962.

Certiorari Denied by Supreme Court April 3, 1963.

Maxey & Oakley, Livingston, for complainants.

Maddux & Cameron, Cookeville, for defendant.

SHRIVER, J. This is a suit to recover under a policy of Fire Insurance for the loss of a dwelling and its contents.

The complainants, Homer Taylor, Ruby Taylor and Citizens Bank of Albany, Kentucky filed their original bill in the Chancery Court at Byrdstown on January 13, 1962 alleging that the defendant Insurance Company had issued its policy to the complainant Homer Taylor insuring certain residental property belonging to him and his wife for $7,500.00 of which $5,500.00 was on the dwelling house and $2,000.00 on its contents.

The Citizens Bank of Albany, Kentucky had made a loan to the Taylors and it was alleged that it had relied on this insurance policy in making the loan and was therefore a proper party.

It is further alleged that on or about November 10, 1961, the house insured under said policy was accidently destroyed by fire along with all its contents. A proof of loss was duly executed and tendered, however, the adjuster for the defendant company declined to accept same.

The defendant Insurance Company answered denying liability under the policy on the grounds that Homer

Taylor did not have an insurable interest in the property at the time of the loss and that the policy had been cancelled at his request more than a month before the loss.

A jury was demanded in the pleadings but the demand was withdrawn and, by agreement, the cause was heard before the Chancellor on oral and documentary evidence without the intervention of a jury.

After the hearing the record was taken under advisement and briefs filed by counsel for the respective parties. Thereafter, the Chancellor delivered his opinion and finding of facts on May 22, 1962 granting a recovery to the complainants for the defendant's proportionate share of the liability after taking into consideration other insurance on the property. However, he also awarded the full statutory penalty.

From the action of the Chancellor an appeal was prayed, granted and perfected to this Court and assignments filed.

—Assignments of Error—

There are only two assignments which are as follows:

"1. The Court erred in failing to find that the policy sued upon had been cancelled by Homer Taylor, the named insured, prior to the fire.

"2. The Court erred in finding that the facts justified an award of the full penalties provided by 56 T.C.A. sec. 1105 for failure to pay the loss."

—Motion to Dismiss—

The Appellees have moved this Court to dismiss the appeal, strike the assignments of error and affirm the decree of the Chancellor on the ground that the record in the cause contains no motion for a new trial.

We have considered this motion and the briefs filed in support and in opposition to it and are of opinion that Section 27-303 T.C.A. is controlling and requires that the motion be denied.

This section of the Code was taken in its present form from the 1950 Code Supplement, and is a modification of Chapter 94 Public Acts of 1929. In its original form this Statute did not contain the provision which was added when the 1950 Code Supplement was adopted, the added words being; "[A]nd no motion for a new trial shall be necessary"

This added provision when read in its context provides clearly that, in all cases tried in a Court of Record without the intervention of a jury, whether in a Court of Equity or a Court of Law, and whether tried according to the forms of Chancery or the forms of Law, are reviewable on a simple appeal and no motion for a new trial is necessary.

—THE FACTS AND THE LAW—

As is set forth in the opinion of the Chancellor, the policy in question was issued through the Roy Koger Insurance Agency of Byrdstown, Tennessee, to Homer Taylor and is dated January 9, 1960, it being a renewal of a policy issued some years previously.

At the time of the issuance of the policy Homer Taylor and Ruby Taylor were man and wife and owned the lands as tenants by the entirety, however, the Taylors were divorced in September 1960 and in the property settlement which was approved by the Court, Homer Taylor executed a warranty deed to Ruby Taylor covering the real estate in question.

The fire loss occurred November 10, 1961, and, as was held by the Chancellor, the weight of the proof shows that the value of the house at the time of the loss was about $10,000.00.

The adjusters for the defendant Insurance Company and the National Surety Corporation which had issued an additional policy on this property, agreed that the loss from destruction of the house and its contents was $11,641.00.

The Chancellor found that the Citizen's Bank of Albany, Kentucky was a proper party by reason of a trust deed in its favor to secure a $3,500.00 note which was the joint indebtedness of the Taylors.

It was held by the Chancellor that since Homer Taylor, at the time of the loss, was living in the residence in question and had his personal effects and articles of household goods there and, since he was in actual possession of the premises, responsible for its upkeep and maintenance, he had an insurable interest in the property, particularly since there is no sole and unconditional ownership clause in the policy.

It is to be noted also that there is no assignment of error directed to this holding of the Chancellor.

There was a prayer for a reformation of the policy but the Chancellor found that reformation was not necessary in order to grant relief under the bill, and entered a judgment as above noted.

He found, however, that the recovery should be proportioned between the insurors as required by the terms of defendant's policy, noting that the National Surety

Company has recognized its liability and stands ready to pay its proportionate share of the loss.

The decree provides that the complainant have and recover of the defendant American Insurance Company the sum of $5,617.36, this being the amount agreed upon between the complainants and the claims adjusters representing the two companies involved, and being the proportionate part owed by the defendant herein.

The decree also recites;

"It is further ORDERED, ADJUDGED AND DE-CREED by the Court that the complainants have and recover of the defendant 25% penalty as provided by statute, in addition to the above amount, the same being $1404.34."

Counsel for the defendant insurance company have filed a very exhaustive and well reasoned brief in support of the proposition that Homer Taylor had told Glenn Poore, an office employee of Koger Insurance Agency, to cancel the policy of insurance. It is asserted that this occurred about a month before the loss and that this oral statement of Taylor to said employee of Koger Insurance Agency operated as an immediate cancellation of the policy then and there without further action on the part of the Insurance Company or the insured.

We have reviewed the evidence with regard to this alleged cancellation and concur in the Chancellor's conclusions of fact and law in regard thereto.

As bearing on this question it is to be noted that Roy Koger, owner of the Koger Insurance Agency was an employee of the only bank in Brydstown and operated his insurance business in addition thereto. When Taylor

was building the house in question here he borrowed money from the bank where Koger worked and Koger suggested that he needed insurance on this house and Taylor said to him "All right, write me up some insurance." That is all that anyone seems to remember about the original purchase of the insurance policy. The policy never came into the hands of Homer Taylor, he never saw it, it was held in the Byrdstown Bank where Koger worked, as a part of the security for the Bank's indebtedness. Five years later that policy expired and the contract which is before the Court now was issued as a renewal thereof and was lodged in the Byrdstown Bank.

Throughout this entire period Taylor paid his premiums to Roy Koger who accounted to his principal, the defendant Insurance Company. Taylor also carried workmen's compensation and automobile liability insurance with Koger. Taylor ran his automobile into a stump and, as a result, the Insurance Company cancelled his automobile collision insurance, but left in force his public liability and other insurance.

In these circumstances, it appears that Taylor saw Glenn Poore, who was office manager for the Koger Insurance Agency, and being out of humor about the cancellation on his collision insurance, he told Poore to cancel his other insurance. This message was relayed by Poore to Koger later that day but Koger declined to act on it and did not cancel the insurance but continued it in force, and, as he had done previously, sent the premium in to the insurance company and never notified the insurance company of Taylor's conversation with his office manager, Poore.

Looking more closely at the testimony offered with regard to this incident, Taylor testified;

"So he cancelled my collision on my car and I did not have any collision insurance and I went down to Mr. Swallows and got insurance but they never did cancel my liability and property damage and I never did get anything back until about two months ago I got a letter that my insurance was run out unless I renewed it."

In testifying about this Taylor also said that he did not feel good toward Mr. Koger because of the cancellation of his collision insurance, and, when asked about buying insurance on the house with another agency, he answered:

"The way they mixed me up I did not know what I had, I did not know if I had anything or not, I did have some with Mr. Koger."

He was then asked if the Koger Insurance Agency ever offered any unearned premium back on the fire policy and he answered:

"No, never did notify me about nothing."

He further testified that the policy at that time was at the Citizens Bank and that he was never asked to sign any lost policy statement or anything else.

It was testified in behalf of defendant that the conversation regarding cancellation occurred in a cafe in Byrdstown but, when asked about that, Taylor answered:

"I do not know what you are talking about when you say it happened in the cafe."

He further stated:

"I have no recollection of walking in there and talking to Mr. Poore in the cafe at all * * *. I do not

think I ever talked to Mr. Poore at any time in the cafe.''

When asked if he denied telling him that he wanted all his insurance cancelled, he stated,

''If I was ever in there with him I have no recollection of it.''

There is some confusion in the record with respect to what Taylor meant when he told Poore to cancel his insurance. At that time, he had liability and collision insurance on his car and there is some question as to whether he was instructing Poore to cancel the entire policy on the car since the collision was cancelled or was asking that all his insurance, including that on the house, be cancelled.

In any event, the day after the fire Koger told him that his insurance on the house was still in force. Furthermore, the adjusters for both insurance companies met and agreed to share the loss on an equal basis and so notified Taylor. At another point Taylor, when asked if he ever had called for his premiums to be returned to him after he cancelled his insurance, answered, ''I did not cancel it except on the car, they notified me every time to send in the premium.''

Mr. Glenn Poore testified that he and James Gardner were in the Dixie Cafe about a month before the fire and that Taylor came in and ''Told me to cancel his insurance, that another company wrote his automobile business, and told me I couldn't blame him for taking it with the company for writing his business.'' He further testified that, at the time of the fire, the premiums had been paid on the policy and had been remitted to the

company and that the company had never been notified about the cancellation, if any.

Mr. James K. Gardner, adjuster of Tennessee Adjustment Bureau, testified that he was in the Dixie Cafe with Glenn Poore when Homer Taylor came in and leaned over and told Mr. Poore to cancel his insurance and Mr. Poore said O.K.

This witness further testified that he represented the defendant, The American Insurance Company, in the adjustment of the fire loss in question here and that, after looking into the matter and talking to Mr. Koger, he proceeded to adjust this loss agreeing with the adjuster for the other company that had a policy on the premises that the amount of the loss was $11,600.00 and that the American Insurance Company would share the loss equally with the other company.

The deposition of Mr. Roy Koger was read at the trial wherein he stated that at the time the fire occurred in November 1961 the company had received the premiums due under the policy in question here and, when asked about the cancellation of the policy, he stated that when his office manager, Poore, told him of the conversation with Taylor, he felt like Taylor was "Kind of sore" at him because of the car insurance and he said;

"So I figured he would cool off and not cancel his policy, and I actually hadn't had a chance to talk with him or discuss this until this loss occurred, and then when it occurred, I didn't know just what shape the thing was in so I talked with Gardner, the General Adjustment Bureau man, and he said our policy was still in force, and his requesting it be cancelled didn't have anything to do with it, so I

told Homer, (Taylor) that the adjuster had told me that our policy was still in force too, and according to that, we would split the loss. That was about all that was said about it until it come up.''

He was then asked,

''And so, in so far as you're concerned, the policy was in force at the time the loss occurred?

''A. That was my understanding. I didn't understand that his request would necessarily effect a cancellation unless we got the policy back, or had a signed release from him.''

The cancellation provision in the policy is as follows:

''This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.''

It further provides that the policy can be cancelled by the Company by giving to the insured a five days written notice of cancellation.

In Commercial Casualty Insurance Company v. Columbia Casualty Company, 22 Tenn. App. 656, 125 S. W. (2d) 493, it was held that the burden of proving that there has been a cancellation of a policy rests on the party asserting it.

And in McKinzie v. Planters Insurance Company, 56 Tenn. 261, it was held that an insurance company, after knowledge of facts rendering the policy void, recognizing the existence of the contract by acting upon it, de-

manding and receiving payments of assessments or premiums under it, thereby waived all right to void it.

We agree with counsel for the complainant that Roy Koger was shown to be the duly authorized and licensed agent for the defendant American Insurance Company but there is no sufficient showing that Mr. Glenn Poore was an agent of the American Insurance Company. The fact that he worked in the office of the Koger Insurance Agency does not, necessarily, make him an authorized agent of the defendant.

In any event, the authorized agent did not act upon the request that was made to Mr. Poore to cancel the policy. Therefore, we agree with the conclusion of the Chancellor that the policy was not cancelled but was in force at the time of the fire.

It results that assignment No. 1, is overruled.

As to assignment No. 2, with respect to the 25% penalty which the Chancellor allowed, we are constrained to hold that, in the first place, the company had reasonable legal and factual grounds upon which to contest the payment of this claim, and, in the second place, we do no think that the proof in this record is sufficient to sustain a penalty of 25%.

As was said in Columbian National Life Insurance Company v. Harrison, 6 Cir., 12 F. (2d) 986 the penalty is not recoverable where refusal to pay rests on substantial legal grounds.

Again it was held in Supreme Ruling of the Fraternal Mystic Circle v. Snyder, 227 U. S. 497, 33 S. Ct. 292, 57 L. Ed. 611, and in Globe Indemnity Co. v. Union Planter's Bank, 6 Cir., 27 F. (2d) 496 that this section

does not make the mere refusal to pay sufficient evidence of bad faith to justify the added recovery. It requires that bad faith and subsequent additional loss be shown.

In Edington v. Michigan Mut. Life Ins. Co., 134 Tenn. 188, 183 S. W. 728, it is said that to authorize a recovery where bill was taken for confessed, there must be facts alleged showing such additional expenses, loss and injury that the Court may be able to measure same.

Such showing was not made in the instant case.

The assignment as to the penalty is sustained.

It results that the judgment for $5,617.36 is affirmed but the allowance of the penalty is denied.

As thus modified, the judgment of the Chancellor is affirmed.

Modified and affirmed.

Humphreys and Chattin, JJ., concur.