# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**August 10, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

MID-SOUTH BUILDERS, INC., )
)
    Plaintiff/Appellant, )   Shelby Chancery No. 106140-1
)
v. )
)
DELORES WILLIAMS and )   Appeal No. 02A01-9805-CH-00126
BESSIE L. WILLIAMS, )
)
    Defendants/Appellees. )

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE NEAL SMALL, CHANCELLOR

For the Plaintiff/Appellant:      For the Defendants/Appellees:

Stephen F. Libby      Sam F. Cole, Jr.
Memphis, Tennessee      Gerald W. Pickens
     Memphis, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a construction contract case. The contract required the contractor to make home repairs and improvements on the homeowner's property. The contractor fully performed, and the homeowner refused to pay for the work. The trial court held that the contract had been rescinded, but ordered homeowner to pay *quantum meruit* damages. We reverse and remand.

On November 14, 1994, Plaintiff/Appellant Mid-South Builders, Inc. ("Mid-South Builders"), acting through one of its employees, Jay Geyser ("Geyser"), entered into a contract with Defendant/Appellee Delores Williams ("Williams") for home repairs and improvements on Williams' property located at 877 North Third in Memphis, Tennessee. The contract provided that Mid-South Builders would perform certain home repairs and improvements for Williams at a cost of $28,500.

The contract was a standard form contract which included blanks. It described, in Geyser's handwriting, the construction work to be performed by Mid-South Builders. Repairs and improvements to the exterior of the home included the installation of siding, new shutters, a new roof, and changes to the screen porch. Interior alterations included painting the walls and replacing the floor in the kitchen, bedroom, bathroom, and utility room; replacing the cabinets in the kitchen and bathroom; installing a new sink in the kitchen and vanity in the bathroom; enlarging a bedroom closet, and installing a new hot water heater. The contract included a standard cancellation clause which allowed buyer to cancel the contract within three working days after signing the agreement.

Subsequently, Geyser left his employment at Mid-South Builders. Williams became concerned about alleged oral promises made by Geyser that were not included in the contract. On January 24, 1995, James Oliver ("Oliver"), president of Mid-South Builders, met with Williams and her sister Defendant/Appellee Bessie Williams to insure that all parties understood the scope of the work to be performed by Mid-South Builders.[1] The parties executed a second contract which included an identical description of the work to be performed, except that the description was typed instead of handwritten. Williams wanted clarification of some of the work to be performed, so Oliver added several provisions clarifying some of the initial provisions. Oliver testified that the scope of the work remained unchanged, and the contract price remained $28,500. Williams

---

[1]Bessie Williams did not sign the initial contract but co-signed the second contract as co-owner of the property. Apparently this was done to enable Delores Williams to qualify for financing to pay for the repairs and improvements. Delores Williams owns the property in fee simple.

acknowledged that the two contracts were the same. The second contract was dated November 14, 1994.[2]

Williams requested that work begin as soon as possible, so Mid-South Builders began work the next day, on January 25, 1995. After Mid-South Builders began work, Williams requested that Mid-South Builders replace the floor on the front porch. One of Mid-South Builders' workers told Williams that the work on the front porch was not part of the contract. On the evening of January 25, 1995, Williams sent a letter to Mid-South Builders rescinding the contract. The following Monday morning, Mid-South Builders' workers had not received the letter of rescission, so the workers arrived at the property to continue the repairs. Williams told them to stop work because she had rescinded the contract. One of the employees then called Oliver. Oliver spoke with Williams over the telephone and told her that front porch work was not part of the contract but agreed for the workers to place a sheet of plywood on the front porch to address her concerns. Williams said that Oliver came to the property and told her that she could not "break" the contract because they had ordered the materials. Subsequently, Williams never indicated a desire to rescind the contract, and the work described in the contract was completed by the end of April, 1995. On three different occasions, Williams signed a final completion certificate indicating that she was "completely satisfied" with Mid-South Builders' work. Nevertheless, Williams refused to make any payment to Mid-South Builders.

On August 3, 1995, Mid-South Builders filed a complaint against Delores and Bessie Williams seeking payment under the contract or, in the alternative, for *quantum meruit.* The Williams filed an answer alleging that the work was not completed in a workmanlike manner. Mid-South Builders later filed an amended complaint seeking the enforcement of a contractor's lien on the property. On January 27, 1997, the Williams filed an answer to the amended complaint in which they asserted that the contract was rescinded on January 27, 1995.

In a bench trial, the trial court bifurcated the proceedings. The first part of the trial focused on the allegations of breach of contract and rescission. There is a complete transcript in the record of these proceedings. At the close of the plaintiff Mid-South Builders' proof, the trial court held:

---

[2]The first page of the second contract was dated November 24, 1994 while the second page was dated November 14, 1994 which was the date of the original contract. Oliver testified that the November 24, 1994, date on the first page of the second contract was a mistake.

> [T]hat the contract between [the parties] . . . should be declared null and void due to the failure of plaintiff Mid-South Builders, Inc. to comply with the recission [sic] of the contract entered into between plaintiff and defendants which was timely made by certified mail in compliance with the contract of plaintiff and Section 66-11-204 T.C.A. . . . .

Thus, the trial court held that Williams' letter rescinding the contract was an effective rescission. The trial court stated at this point that Mid-South Builders would be compensated on the basis of *quantum meruit*. The defendants put on no proof at that point, although both Delores Williams and Bessie Williams were examined by counsel for Mid-South Builders. The proceedings were adjourned for the parties to prepare proof on the issue of *quantum meruit*, regarding the value added to Williams' house by the work done by Mid-South Builders.

Months later, the trial court heard testimony on the *quantum meruit* issue from two expert witnesses, Joe Pickering and Charles Hunt. Their testimony is not included in the record on appeal. However, the trial court, *sua sponte*, adjourned the proceedings to conduct an on-site inspection of Williams' house:

> [D]ue to conflicting testimony by Joe Pickering, Appraiser, and Charles G. Hurt, President of the Real Estate Mart of Tennessee, and President of Chuck Hurt Construction Company, Inc., as to the quality of the work performed, the Court upon its own motion temporarily adjourned and proceeded to 877 N Third Street, Memphis, Tennessee, for the Court to satisfy itself as to the value of the work performed . . . .

In the course of the on-site inspection, the trial judge attributed shoddy workmanship to Mid-South Builders regarding certain repairs on Williams' house. However, on appeal, Mid-South Builders asserts, and Williams does not dispute, that the repairs criticized by the trial judge were not performed by Mid-South Builders and are not the repairs which are the subject of the contract in this case.

In ruling on the issue of *quantum meruit*, the trial judge did not refer to the opinions expressed in the conflicting testimony of the two experts, Pickering and Hunt. Instead, the trial judge relied on his own expertise in gauging the value of the repairs performed by Mid-South Builders and the increased value to Williams' home. For example, in valuing the siding work performed by Mid-South Builders, the trial court stated:

> The siding, I think, added substantially to the house. Probably a little bit more than the $2,500 because it will shed water and it seems to be put up so it will stay.
>
> Vinyl siding, though, of course, will not stay permanently. It's advertised heavily, but it vibrates. When the wind blows, it vibrates and it eventually will come down.

3

On the value added to Williams' home by Mid-South Builders' work, the trial court stated:

> It just so happened that the Court, within a couple of years of the time that we're talking about here owned two buildings in this very neighborhood, and I can tell you that -- two residential units that happened to be used as duplexes -- but they were purchased and later sold -- both of them for less than the amount of this contract for repairs that was initially executed at $28,500.
>
> The property in this area, even approaching it, you pass boarded up -- I mean, it's completely boarded up buildings. It's definitely substandard housing and in an area that is not considered desirable property as y'all know.
>
> As you drove out there you passed numerous boarded up vacant properties. We're not talking about, really, the contract except it's just surprising to the Court that the builder would enter into a contract to repair this house for $28,500 . . . .

Based on the trial judge's on-site inspection, the trial court concluded:

> And upon the examination by the Court of the property in question, it was determined by the Court that the work was improperly done and in fact will result in further damage to the property owned by defendants;
>
> And having made the aforementioned determination the Court reconvened in the Courtroom whereupon the Court found that the plaintiff Mid-South Builders, Inc. was entitled to the sum of Eight Thousand Five Hundred Dollars ($8,500) based upon the theory of *quantum meruit. . . .*

Thus, Mid-South Builders was awarded a judgment of $8,500. From this order, Mid-South Builders appeals.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of the correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d).

Mid-South Builders argues that the trial court erred in finding that the contract was effectively rescinded because the parties entered into the contract on November 14, 1994, and the Williams' did not attempt to rescind the contract until January 25, 1995, several months beyond the three-day deadline in the contract for cancellation. In the alternative, Mid-South Builders contends that if there were an effective rescission of the contract, the Williams' waived the rescission by allowing Mid-South Builders to complete the work described in the contract. Finally, Mid-South Builders challenges the amount of the *quantum meruit* award of damages set by the trial court, arguing that the trial judge ignored undisputed proof in the record and instead relied upon his personal inspection of the quality of the work.

The Williams simply argue that the record before this Court does not contain all of the evidence upon which the trial court made its factual findings, namely the testimony of Joe Pickering

4

and Charles Hurt, two appraisers. From this, the Williams argue that this Court must assume that the record supports all of the findings of the trial court.

Rescission or cancellation of a contract involves setting aside or avoiding a contract. *Mills v. Brown*, 568 S.W.2d 100, 102 (Tenn. 1978).

> [C]ancellation, or rescission must be clearly expressed, and acts and conduct of the parties to be sufficient, must be positive, unequivocal, and inconsistent with the existence of the contract. Conduct which is not necessarily inconsistent with continuance of the contract will not be regarded as showing an implied agreement to discharge the contract . . . .

*Arkansas Dailies, Inc. v. Dan*, 260 S.W.2d 200, 203 (Tenn. App. 1953). The right to rescind or cancel may be waived "by continuing to treat the contract as a subsisting obligation." *Tennessee Adjustment Service, Inc. v. Miller*, 390 S.W.2d 696, 702 (Tenn. App. 1964). The burden of proving rescission is on the party asserting it as a defense. *Commercial Cas. Ins. Co. v. Columbia Cas. Co.*, 125 S.W.2d 493, 495 (Tenn. App. 1938).

In this case, even without considering the undisputed fact that Williams' attempted rescission occurred months after the contractual deadline for rescission, the evidence clearly preponderates against the trial court's finding that Williams did not waive her rescission of the contract. Upon being told that repairs to the porch were not part of the contract, Williams sent a letter to Mid-South Builders rescinding the contract. Without being notified of Williams' correspondence, Mid-South Builders' workers returned to the property to continue work. Williams told them of the rescission and told them to stop work. An employee then called Oliver. Oliver testified that he spoke with Williams on the telephone and told her that they would place plywood on the porch. Oliver testified that Williams agreed and allowed Mid-South Builders to complete all of the work under the contract. On the other hand, Williams contends that Oliver came to the property and told her that she could not "break" the contract because Mid-South Builders had already ordered the materials. Even assuming that the trial court credited Williams' testimony, it is undisputed that Williams allowed Mid-South Builders to complete the work described in the contract. It would be patently unfair to permit Williams to purportedly rescind the contract, acquiesce in Mid-South Builders fully performing the contract, and then attempt to rely on the earlier purported rescission. Williams' actions were clearly inconsistent with cancelling or rescinding the contract. She "treat[ed] the contract as a subsisting obligation." *Tenn. Adjustment Serv., Inc.*, 390 S.W.2d at 702. The trial court's finding that Williams effectively rescinded the contract must be reversed.

5

If the contract was not effectively rescinded, it is undisputed that Mid-South Builders fully performed the work described in the written contract, and that the contract price for the work was $28,500. However, Williams also asserted as a defense that Mid-South Builders breached the contract by performing substandard work.

In the course of the proof put on by plaintiff Mid-South Builders, there was evidence introduced regarding whether Mid-South Builders' work was satisfactory. It is undisputed that defendant Delores Williams signed a completion certificate after the work was done, indicating that she was satisfied with the quality of the work. In her testimony in response to questions from counsel for Mid-South Builders, Delores Williams voiced complaints about the work done by Mid-South Builders, regarding problems that appeared after the work was completed. However, before the defendant Williams put on her proof that Mid-South Builders breached the contract, the trial judge ruled that the contract had been rescinded. Proof in the second phase of the bifurcated proceedings was limited to the issue of *quantum meruit* and the value added to Williams' home by the work performed by Mid-South Builders.

The evidence on the issue of *quantum meruit* involved, to a limited degree, the issue of the quality of workmanship of the repairs and improvements done by Mid-South Builders. However, the proof was couched in terms of the value added to Williams' home, not whether the work was so unsatisfactory as to be deemed a breach of the contract. No finding was made by the trial court on this issue.

Consequently, it is necessary to remand this case to the trial court for proceedings on the issue of whether the work performed by Mid-South Builders was so unsatisfactory as to constitute a breach of the parties' contract. It is not necessary on appeal to reach the issue of *quantum meruit.*

The omission of the testimony of experts Pickering and Hunt from the record on appeal need not be considered because their testimony dealt with the issue of *quantum meruit.* The record on appeal in this case conveys a "fair, accurate and complete account of what transpired" with respect to the issue we reach on appeal, namely, the issue of rescission of the contract. *See Johnson v. Hardin*, 926 S.W.2d 236, 240 (Tenn. 1996) (citing Tenn. R. App. 24(b)). The issue of *quantum meruit* is not reached until the Williams's defense of breach of contract is resolved.[3]

---

[3]It must be noted that, on the issue of *quantum meruit*, the trial judge's interjection of his own experiences regarding the value of certain improvements, such as vinyl siding, and the value

6

In sum, the evidence preponderates against the trial court's finding that Williams effectively rescinded the contract, and the trial court is reversed on this issue. The case is remanded for proceedings on the issue of Williams' defense that the workmanship of Mid-South Builders was so unsatisfactory as to constitute a breach of the parties' contract. The issue of *quantum meruit* is addressed only if the trial court concludes that Mid-South Builders breached the contract so as to render it null and void.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs are taxed against the Appellee, for which execution may issue, if necessary.

_____
**HOLLY KIRBY LILLARD, J.**

_____

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**

---

of properties in the Williams' neighborhood from the trial judge's prior ownership of property in the area, is, at best, questionable. However, we need not address this issue because it pertains only to the issue of *quantum meruit.*