**AT KNOXVILLE**

| | |
|---|---|
| LEONA GENEVIEVE JUSTUS, EXECUTRIX, | ) C/A NO. 03A01-9903-CH-00093 |
| | ) |
| | ) SEVIER CHANCERY |
| Appellant, | ) |
| | ) HON. TELFORD E. FORGETY, JR., |
| v. | ) CHANCELLOR |
| | ) |
| MOUNTAIN LIFE INSURANCE CO., | ) |
| ET AL., | ) VACATED |
| | ) AND |
| Appellees. | ) REMANDED |

C. DAN SCOTT and DAVID H. JONES, SCOTT & JONES, Sevierville, for Appellee, Nancy Simmons.

LEWIS S. HOWARD, JR., Knoxville, for Appellee, Mountain Life Insurance Company.

ROBERT L. OGLE, JR., OGLE & VENABLE, Sevierville, for Appellant.

# **O P I N I O N**

Franks, J.

In this action to recover under a credit life insurance policy, the Trial Judge granted defendants summary judgment, and the Executrix has appealed.

The Trial Court, in granting summary judgment elaborated:

The Court further finds that the contract of insurance on which the plaintiff claims its right of recovery, contains the specific authority that allows Mountain to terminate the contract with thirty days notice. There is no dispute as to any material fact. The contract was terminated and the premiums refunded within thirty days notice to the insured, which Mountain had a right to do under the insurance contract.

We vacate and remand for trial. There are several issues of disputed fact regarding the existence of a contract for insurance, and the issues of Simmons' negligence presents a question of fact, making summary judgment inappropriate.

On August 5, 1996, Lee Justus and his daughter Angie Justus, executed a promissory note in the amount of $28,456.20 at Sevier County Bank, secured by a piece of real property. When they signed for the loan, the bank offered them credit life insurance, which Lee and Angie Justus accepted in the amount of the loan. Nancy Simmons, a loan officer at Sevier County Bank sold the credit life insurance to the debtors, acting as an agent for Mountain Life Insurance Company. The premium was paid and accepted by the bank and insurance company. Simmons represented that no written application was needed and that the insurance was in full force and effect as of that day.

Ross Summit is an employee at Sevier County Bank and is an agent of Mountain Life Insurance Company. He states in his affidavit that in furtherance of his performance as agent, he delegated to the loan officers the duty of offering credit life insurance to customers making loan applications. The loan officers, including Nancy Simmons could take applications and automatically issue a certificate of insurance which was then forwarded to Mountain Life. He explains that whether the Bank can automatically bind the insurance company depends on the amount of the insurance policy. If the insurance is less than the set limit, the bank may automatically issue the policy; if it is more than the set limit, the debtor must submit an application, and insurance is subject to proof of insurability and approval by Mountain Life.

In the record is a letter from Mountain Life dated July 19, 1988, regarding its credit insurance underwriting limits. This states that the automatic issue limit for debtors and joint debtors is $50,000 for debtors age 18 thru 59, and $25,000 for debtors age 60 to 64. Angie Justus was born in 1973, thus within the 18 to 59 grouping. On the loan documents, Lee Justus's date of birth is listed as August 24, 1937, but is listed as August 24, 1934 on his death certificate.

The policies also list the limits for automatic issue of insurance, but there are two versions of the insurance policy in the record. One version sets the limit at $25,000, the other sets the limit at $50,000.

In this case, the agent informed the debtors on August 5, 1996, that no application was necessary and that the insurance was in full force and effect. In October 1996, Nancy Simmons called Angie Justus and stated that there was another form that needed to be completed. Simmons admitted that she made a "mistake," and that the application did need to be filed with Mountain Life.

Between August 1996 and October 1996, Lee Justus was diagnosed with cancer. On the October application, it was stated that Lee Justus had been diagnosed with cancer and was undergoing treatment. Mountain Life subsequently denied coverage to Lee Justus for medical reasons, and refunded the premium. Lee Justus died on January 10, 1997 from lymphoma.

When evaluating a motion for summary judgment, the trial court should consider "(1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for a trial." *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). If the trial court determines that there is no genuine issue as to any material fact, the movant is entitled to judgment as a matter of law. *Id.* at 215. No presumption of correctness attaches to decisions granting summary judgment involving questions of law only. *Hembree v. State*, 925 S.W.2d 513 (Tenn. 1996);

Tenn.R.App.P. 13(d). This Court must view the evidence in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. *Gray v. Amos*, 869 S.W.2d 925 (Tenn.App. 1993).

The Defendant Mountain Life contends that the plaintiff failed to state a claim against it on which relief could be granted. The cause of action alleged was for breach of contract with respect to a credit life insurance certificate. Mountain Life contends that the insurance was subject to approval, which was later denied, with proper notice to Mr. Justus.

There is a disputed issue of material fact as to whether the bank had actual authority to issue the policy without approval of the application, and assuming *arguendo* it did not, the evidence establishes that it had apparent authority to do so, which would bind Mountain Life to the Contract.

Justus was originally told that an application did not need to be filled out and that the insurance was in full force and effect from the time he became indebted to Sevier County Bank. He relied on that statement and did not seek alternative life insurance. Moreover, Justus had not been diagnosed with cancer at that time, and there is no evidence that he had reason to know he suffered from such a condition.

Apparent or ostensible authority is that which the insurer knowingly permits the agent to assume or which the insurer holds the agent out as possessing. *Rural Education Assn. v. Bush*, 42 Tenn.App. 34, 298 S.W.2d 761 (1956). This apparent authority can exceed the powers actually granted, and can be equally binding on the principal when the insured is unaware of the limitations or restrictions on the agent's authority. *Corbitt v. Federal Kemper Ins. Co.*, 594 S.W.2d 728 (Tenn.App. 1979).

In *Vulcan Life & Accident Insurance Company v. Segars*, 391 S.W.2d 393 (Tenn. 1965), the Supreme Court held that the insurer may be estopped to deny liability for risks not covered in the policy, due to the negligence of its agent. In that case a bank president, as agent of the insurance company, told the borrower who purchased credit life

insurance that the insurance would pay the note in the event of the borrower's death while the note remained unpaid. The agent negligently failed to inquire into the borrower's state of health and did not call the attention of the borrower to the sound health condition of the policy. In holding that the insurer had waived or was estopped to plead the sound health condition as a defense, the Supreme Court stated:

> With respect to such a situation it is said in Vance, Insurance, 3rd Ed., Anderson, Section 89, page 540:
>
> 'After all, the man on the street purchases his insurance policy in very much the same way that he purchases his automobile or his reaper or other chattels. He knows no more about the making of a contract of insurance than he does about the making of an automobile, and he naturally relies upon the skill and good faith of those who hold themselves out to be experts in such matters, by advertising their wares for sale. It would seem to be the clear duty of the insurer, professing to draw an instrument protecting the applicant's property against certain defined perils, to exercise due diligence to supply a policy which will effect the purpose intended. Any damage caused to the applicant through the agent's mistakes or negligence in making inquiries that he should know to be pertinent should rest on the insurer. The situation seems to be strikingly analogous to that expressed in the familiar rule of the law of sales to the effect that a vendor supplying an article which he knows is to be used for a specific purpose impliedly warrants that the article furnished is suitable for that purpose.'

*Vulcan*, 391 S.W.2d at 397-398.

In this case, Mountain Life held the bank officers out as agents, giving them the actual authority to issue insurance under certain conditions. The insureds had no way of knowing that in their particular case that the agent did not have actual authority to issue the policy. They believed that she had the authority, and relied upon her statements that the insurance was in effect from the time they became indebted to the bank. Even if Simmons' issuance of the policy without taking an application was in violation of the agency agreement, Mountain Life can still be bound by its agent's actions.

Viewing the evidence in a light most favorable to the opponent of the summary judgment motion, a contract for insurance was entered into on August 5, 1996,

between Mountain Life Insurance Company and the Justuses. In deciding the motion for summary judgment, the Court found this to be the case, but also found that despite that fact, the Court held that the insurance company had a right to cancel the policy upon thirty days notice, and that it validly exercised that option.

The burden of proving that there has been a cancellation of a policy rests on the party asserting it. *Commercial Casualty Ins. Co. v. Columbia Casualty Co.*, 125 S.W.2d 483 (Tenn.App. 1938); *American Insurance Co. v. Taylor*, 367 S.W.2d 300 (Tenn.App. 1962); *see also* 45 C.J.S. § 520 (1993).

The second application for insurance that was filed out on October 11, 1996 states that the application only applies where proof of insurability is required. On that application, it states that the issuance of insurance is subject to the company's approval, and that if the application is not accepted, the premium will be returned. The policy in the record states that "either the Company or the Creditor may cancel this policy upon 30 days written notice."[1]

On October 23, 1996, Mountain Life sent a letter to the Bank informing it that they could not accept coverage on the application submitted by Lee Justus due to his medical history. Mountain Life refunded the premium already paid and stated that Angie Justus could reapply individually. Mountain Life did not state that it was canceling any policy, but rather that it was not accepting the application of October 11, 1996.[2]

There is an issue of whether the provision in the policy allowing the insurance company to cancel the policy for any reason is contrary to public policy. The language in the policy is clear and unambiguous.

> TERMINATION OF CONTRACT
> Either the Company or the Creditor may cancel this policy upon 30 days written notice.

In the face of this language, many courts have held that for reasons of public policy, such provisions constitute a breach of contract for a liability insurer to exercise such

cancellation provisions.  *Harvester Chem. Corp. v. Aetna Casualty Ins. Co.*, 649 A.2d 1296 (NJ.Super. 1994); *L'Orange v. Medical Protective Co.*, 394 F.2d 57 (CA6 Ohio 1968); *See* Johnson M. Purver, Annotation, *Liability Insurer's Unconditional Right to Cancel Policy as Affected by Considerations of Public Policy*, 40 A.L.R.3d 1439 (1971, Supp. 1999).  *Also see Unocal Corp. v. Superior Court of the State of California*, 244 Cal.Rptr. 540, 547 (Cal.App. 1988). .

However, we do not reach the issue of whether such a provision is void is against public policy in this State, on the record before us,[3] because there was no purported cancellation. In order to cancel an insurance company must strictly adhere to procedures spelled out in the policy.  *Black v. Aetna Ins. Co.*, 909 S.W.2d 1(Tenn. App. 1995).

At oral argument, Mountain Life argued that even if the policy was not cancelled there is an exclusion in the policy limiting liability to the premiums paid in the event of death within six months because of a medical condition for which the insured received treatment within six months prior to the date of the policy.  At the time of the initial application Justus's only pre-existing condition related to his heart, which he disclosed, and it was not until one month after the agent assured him the policy was in effect, that Justus was diagnosed with cancer.  The provision is inapplicable because Justus was not treated or diagnosed with cancer prior to the date of the policy.

Nancy Simmons claims that the Plaintiff did not assert any claim against her individually because she was sued in her capacity as agent for Mountain Life, and she takes the position that an agent does not incur liability in a transaction unless it is shown that the agent intended to be personally liable for his or her actions.  She states that she was acting on agent Summit's behalf at all times and not on her own account, and therefore would not be individually liable.

The Trial Court did not address the issue of Simmons' liability as an agent in granting summary judgment.  Simmons relies on cases where the agent, acting within the

scope of its authority, enters into a contract with a third party on behalf of the principal. *See, e.g., Board of Directors of City of Harriman School District v. Southwestern Petroleum Corp.*, 757 S.W.2d 669 (Tenn.App. 1988). However, an agent can become personally liable if the agent acts negligently or wrongfully. *Corbitt v. Federal Kemper Ins. Co.*, 594 S.W.2d 728 (Tenn.App. 1979); *Waddell v. Davis 571 S.W.2d 844* (Tenn.App. 1978). Assuming *arguendo*, that Simmons was negligent in not having Justus submit an application when the insurance was initially requested, and Justus suffered damages, she could be held personally liable for those damages. It would appear that Justus relied on the statement of Simmons that he was covered, which precluded him from obtaining coverage elsewhere. All of these are clearly factual issues that are to be resolved by the trier of fact. The summary judgment for both defendants was inappropriate, and are vacated and the cases remanded for trial on the issues as framed by the pleadings .

The cost of the appeal are assessed jointly to the defendants.


_____
Herschel P. Franks, J.


CONCUR:



_____
Houston M. Goddard, P.J.




_____
Charles D. Susano, Jr., J.